633 A.2d 1185

Charles T. LOVE and Suzanne F. Love, Executors of the
Estate of Charles A. Love, Deceased, and Leona K.
Love, in her own right, Appellants,

v.

RAYMARK INDUSTRIES, INC., Babcock & Wilcox Company,
H.K. Porter Company, Inc., Individually and as successor-in-
interest to Southern Textile Company, formerly Southern As-
bestos Company, Nicolet Industries, Inc., H.R. Curry Company,
Inc., The Gage Company, Colonial Supply Company, Globe
Electric Company, Inc., and Durabla Manufacturing Company

v.

GOODYEAR TIRE & RUBBER COMPANY
and Goodyear Canada, Inc.

Superior Court of Pennsylvania.

Argued June 7, 1993.

Filed Nov. 1, 1993.

· Antonio D. Pyle, Pittsburgh, for appellants.

Kathryn Johnston, Beaver, for Colonial Supply, appellee.

Frederick N. Egler, Jr., Pittsburgh, for Globe Elec., appellee.

Before ROWLEY, President Judge, and WIEAND, CIRILLO, DEL SOLE, TAMILIA, KELLY, POPOVICH, HUDOCK and FORD ELLIOTT, JJ.

WIEAND, Judge:

In this action to recover damages for lung cancer allegedly caused by occupational exposure to asbestos products, the trial court entered summary judgment in favor of the defendant manufacturers because the action was barred by the two year statute of limitations enacted by the legislature at 42 Pa.C.S. § 5524(2). After careful review, we affirm.

Charles A. Love was employed from 1942 to 1982 by National Valve & Manufacturing Company as a laborer, welder, sandblaster and shotblaster. Over the years of his employment, Love was exposed to various products containing asbestos. Early in 1982, the plant physician, having examined Love, told him he had a "dirty lung" and recommended that

he surrender his position as a shotblaster. Love did not immediately ask the physician about the cause of his lung condition, but he conceded in subsequent depositions that he had believed it to be work related.[1] Love returned to his former job as a laborer until he retired in July, 1982. He then consulted his family physician, who referred him to Dr. John Mitchell. On September 1, 1982, Dr. Mitchell made a diagnosis of lung cancer, and surgery was performed shortly thereafter. At this time, Love suspected that the cancer was related to his occupational exposure to asbestos.

Following surgery, Love consulted a lawyer, who arranged for him to be examined by Dr. Murray Sachs in January, 1983. On March 9, 1983, Dr. Sachs submitted a written report in which he concluded that there was a causal connection between the lung cancer and Love's prior exposure to asbestos. On March 1, 1985, Love and his wife commenced an action for damages against numerous manufacturers of asbestos products allegedly used during the course of his employment. Love died on July 9, 1987, after which the executors of his estate were substituted as party plaintiffs. On September 11, 1991, the trial court entered summary judgment in favor of Globe Electric Company, Inc., The Gage Company, and Colonial Supply Company, the defendants then remaining in the action.

This Court has recently reviewed the applicable law in *Ingenito v. A C & S, Inc., et al.*, 430 Pa.Super. 129, 633 A.2d 1172 (1993) (J. E02002/93; filed Nov./1/1993). There, we held that an action by the personal representatives of a decedent was barred because the decedent had failed to file an action within two years after a diagnosis of lung cancer and where the cause of the cancer had been immediately knowable to him in the exercise of reasonable diligence. "Reasonable diligence," we said, is an objective or external standard which is the same for all individuals. *Id.* at 131, 633 A.2d at 1174.

1. Love also had a history of smoking. Between 1942 and 1950, he smoked approximately one and one-half packs of cigarettes per day; and from 1950 until the taking of his depositions on October 28, 1985, he smoked a pipe daily.

See: *Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 292, 505 A.2d 973, 988 (1985), quoting *Petri v. Smith,* 307 Pa.Super. 261, 271, 453 A.2d 342, 347 (1982). " 'If a party has the means of discovery within his power but neglects to use them, his claim will still be barred.' " *Ingenito v. A C & S, Inc., et al., supra* 430 Pa.Super. at 131, 633 A.2d at 1174, quoting *Burnside v. Abbott Laboratories, supra* 351 Pa. at 292, 505 A.2d at 988.

Love knew that he had a "dirty lung" in early 1982 and suspected that it was work related. On September 1, 1982, his physician told him he had lung cancer. Love suspected that it was related to his occupational exposure to asbestos. Under these circumstances, even if the physicians did not inform Love of the cause of his lung condition, it was unreasonable as a matter of law for Love not to make inquiry. The diagnosis had been made and Love had suspected the cause. The causal connection between lung cancer and occupational exposure to asbestos was neither obscure nor unascertainable. For Love to fail to make inquiry of his physicians regarding the cause of his lung cancer under the circumstances was unreasonable as a matter of law.

After surgery in September, 1982, Love also believed he might have a cause of action for his disease, for he consulted a lawyer. The lawyer arranged for an examination by another physician in January, 1983. Although we do not know what was told the patient during this examination, it is readily apparent that the existence of a cause of action could have been ascertained by simple inquiry. By this time, Love had been diagnosed with cancer, had been operated upon for cancer, had suspected that his disease was attributable to occupational exposure to asbestos, had consulted a lawyer about a legal remedy and had been sent for yet another medical examination. If, as appellants allege, Love did not have actual knowledge of the causal connection between his lung cancer and his exposure to asbestos, it is clear that, as a matter of law, he failed "to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery [was] based and to institute suit within the prescribed statutory period." *Pocono Internation-*

*al Raceway, Inc. v. Pocono Produce, Inc.,* 503 Pa. 80, 84, 468 A.2d 468, 471 (1983).

Judgment affirmed.

FORD ELLIOTT, J., files a Dissenting Opinion in which DEL SOLE and KELLY, JJ., join.

FORD ELLIOTT, Judge, dissenting:

My review of the record clearly reflects that the point at which decedent *knew* he was injured and what caused his injury was March 9, 1983. It was at that point that he was informed that his cancer was asbestos related. Accordingly, I must dissent from the decision of the majority affirming the grant of summary judgment.

The reasons for my dissent, generally, have been thoroughly discussed in my dissenting Opinion in *Ingenito v. A C & S, Inc., et al.,* 430 Pa.Super. 129, 633 A.2d 1172 (1993). That same reasoning applies with equal force presently. Therefore, I will only undertake a review of relevant facts in this case which I believe demonstrate that summary judgment was improperly granted by the trial court on the record before it.

There is an issue of fact as to whether decedent exercised due diligence in ascertaining if he was injured and what caused his injury. Initially, the majority notes that decedent was told by a plant physician in early 1982 that he had a "dirty lung." Decedent stated in his deposition that when the plant physician told him he had the "dirty lung," decedent figured it might have something to do with his work as a sandblaster. However, decedent also noted that the plant physician never indicated to him what caused the "dirty lung" and did not advise decedent to seek any medical treatment for the condition. In fact, decedent was sent back to work in the plant, as a laborer.

In September of 1982, decedent was diagnosed with lung cancer and underwent surgery to remove part of his lung. Decedent stated in his deposition that it was only after he got out of the hospital that he became suspicious that his cancer might have been work related. Within three months following

the surgery, decedent contacted an attorney. That attorney immediately had decedent examined by another physician who was able to link decedent's lung cancer with occupational exposure to asbestos in a report dated March 9, 1983. Thus from the time appellant was *first* diagnosed with lung cancer, it took him less than seven months to investigate his illness and determine that he had been injured and what caused the injury. I submit that a jury could find such a time frame reasonable and consistent with the exercise of due diligence.

The majority appears troubled that decedent did not immediately inquire of his surgeon, in September 1982, as to the cause of his cancer. Perhaps a jury would also find that troubling. Or perhaps a jury would conclude that other more pressing concerns confronted decedent at that moment such as whether he was going to live; whether he was going to have to undergo radiation treatments or chemotherapy; how his family was going to react to the news that he had cancer, and so on. Perhaps it was not until after decedent survived the surgery and had time to recover that causation became an issue of concern in his mind. Whatever the case, it is important to recall that, absent actual knowledge on decedent's part that he suffered an injury, the standard of reasonable diligence "is sufficiently flexible ... to take into account difference[s] between persons, their capacity to meet certain situations and the circumstances confronting them *at the time in question.*" *Petri v. Smith,* 307 Pa.Super. 261, 271–72, 453 A.2d 342, 347 (1982) (emphasis added).

The majority's analysis affords decedent absolutely no time to exercise due diligence. Because decedent suspected his cancer might be work-related, the majority starts the statute running as of the date decedent was diagnosed with cancer. However, under what I believe to be a proper *Cathcart* analysis, the diagnosis of lung cancer coupled with decedent's suspicions should trigger *not* the statute of limitations, but the duty to exercise due diligence. Whether that duty was properly exercised must remain a jury question in close factual cases such as this.

The majority concludes that, as a matter of law, decedent failed to use all reasonable diligence to be properly informed of the facts and circumstances upon which a right of recovery may have existed. I say that if consulting an attorney within three months of lung cancer surgery and then discovering that it was work related three months after that is a failure to exercise due diligence, as a matter of law, then there would be few, if any, cases which could survive the summary judgment stage.

The very purpose of the discovery rule is to *toll* the running of the limitations period until a plaintiff knows or has reason to know he is injured and the injury has been caused by the act of another. Presently, in perhaps the clearest example of how the rule should operate, decedent, after being diagnosed with cancer, sought out legal advice to investigate whether his harm was an injury. Once decedent ascertained that his cancer was also "an invasion of a legally protected interest, an injury, caused by the actions of another, then the limitations period commences to run. Decedent must be given the benefit of the full limitations period from the date when he gains the requisite knowledge under *Cathcart*. In this case, since decedent learned that his cancer was, in fact, asbestosis within seven months of the cancer diagnosis, the majority would have the statute run from the date of the cancer diagnosis. This, I believe, is an erroneous application of the *Cathcart* formulation. Because the record in this case does not clearly establish that decedent knew or should have known that he was *injured* as of the date of his lung cancer diagnosis, it is best left for a jury to determine whether he acted with due diligence in discovering the injury within months thereafter. If decedent is found to have acted diligently, then the statute would not begin to run until the date decedent's cancer was connected with asbestos exposure. From *that* date, decedent was entitled to a full two years to file his lawsuit and his action is not time barred.

DEL SOLE and KELLY, JJ., join in this Dissenting Opinion.