633 A.2d 1189

Mildred R. BAUMGART, Executrix of the Estate
of Anthony J. Baumgart, Deceased, Appellant,

v.

KEENE BUILDING PRODUCTS CORPORATION, Successor-in-Interest to Baldwin–Ehret–Hill, Inc., a corporation; The Celotex Corporation, Successor-in-Interest to Philip Carey Corporation, Philip Carey Manufacturing Company, Briggs Manufacturing Company and Panacon Corporation, a corporation; H.K. Porter Company, Inc., a corporation; Owens–Corning Fiberglass Corporation, a corporation; Owens–Illinois, Inc., a corporation; Armstrong World Industries, Inc., a corporation; GAF Corporation, a corporation; Combustion Engineering, Inc., a corporation; George V. Hamilton, Inc., a corporation; Pittsburgh Corning Corporation; a corporation; Flexitallic Gasket Company, a corporation; Eagle–Picher Industries, Inc., a corporation; Pittsburgh Gage & Supply Company, a corporation; Garlock, Inc., a corporation; Anchor Packing Company, a corporation; Raymark Industries, Inc., a corporation; John Crane–Houdaille, Inc., a corporation; Allied Corporation, Successor-in-Interest to Bendix Corporation, a corporation; Wagner Division McGraw–Edison Company, a corporation, Appellees.

Superior Court of Pennsylvania.

Argued June 7, 1993.

Filed Nov. 1, 1993.

Edwin H. Beachler, III, Pittsburgh, for appellant.

Gary F. Roberson, Pittsburgh, for Owens Corning, appellee.

Jerry H. Seidler, Pittsburgh, for Wagner Div., appellee.

Before ROWLEY, President Judge, and WIEAND, CIRILLO, DEL SOLE, TAMILIA, KELLY, POPOVICH, HUDOCK and FORD ELLIOTT, JJ.

WIEAND, Judge:

The issue in this appeal pertains to the application of the statute of limitations to wrongful death and survival actions filed against manufacturers and suppliers of asbestos products following the death of Anthony J. Baumgart from mesothelioma. The trial court held that the actions were time barred and entered a summary judgment in favor of the defendants. After careful review, we affirm in part and reverse in part.

Between 1950 and 1980, Baumgart was allegedly exposed to asbestos-containing products during the course of his employment by Witco Chemical Corporation as a laborer, pipe fitter, truck driver, storeroom clerk and auto mechanic. In Septem-

ber, 1984, he began to experience severe pain in his back and shoulder and was treated by Dr. Alfredo Garcia for an arthritic condition. In December of that year, Dr. Garcia referred Baumgart to Dr. Jay Paul, who performed a fibrooptic bronchoscopy at Butler Memorial Hospital. This procedure, performed between January 15, 1985 and January 29, 1985, enabled Dr. Paul to obtain a pleural biopsy which, upon examination, was diagnosed as mesothelioma, a form of lung cancer associated with exposure to asbestos. Both Baumgart and his wife were aware of the diagnosis of mesothelioma before the end of January, 1985; and Baumgart was questioned repeatedly by Dr. Paul about a history of exposure to asbestos. Baumgart was again hospitalized at Allegheny General Hospital between February 13, 1985, and March 9, 1985, during which time the diagnosis of mesothelioma was confirmed by Dr. T. Balinchak. Dr. Balinchak's notes reveal that he, too, knew the cause of mesothelioma to be asbestos exposure and that he questioned Baumgart about his exposure to asbestos. Baumgart, according to Dr. Balinchak's notes, denied any history of exposure to asbestos. Baumgart re-entered the hospital on March 19, 1985, where he died on March 31, 1985. The cause of death was massive pleural effusion and mesothelioma.

Within five months after Baumgart's death, his widow filed a fatal claim petition under the Workmen's Compensation Law in which she contended that death had been caused by an occupational exposure to asbestos during his employment by Witco Chemical Corporation. The present third party action, however, was not commenced until March 26, 1987, when a praecipe for writ of summons was filed.[1] In it, Baumgart's widow named as defendants numerous manufacturers and suppliers of asbestos products. The trial court, on March 2, 1992, entered summary judgment in favor of Wagner Electric Corporation and "all similarly situated defendants" on grounds that the survival and wrongful death actions were barred by the two year statute of limitations which had been enacted by the legislature at 42 Pa.C.S. § 5524(2). The plaintiff appealed.

1. A complaint was filed on April 2, 1987.

■ An action to recover damages for the wrongful death of a person is separate and distinct from the action which is known as a "survival action." *Pezzulli v. D'Ambrosia,* 344 Pa. 643, 26 A.2d 659 (1942); *Holmes v. Lado, M.D.,* 412 Pa.Super. 218, 602 A.2d 1389, *allocatur denied,* 530 Pa. 660, 609 A.2d 168 (1992). See: 42 Pa.C.S. §§ 8301 and 8302. If a person is injured by the act of another, a cause of action may accrue to the injured person. His or her death thereafter does not abate the cause of action. Pursuant to 42 Pa.C.S. § 8302, the cause of action survives the death of the injured person and continues in the decedent's personal representative. The damages recoverable are measured by the pecuniary loss occasioned to the injured person, and therefore to his or her estate, by the negligent act which caused death. See: *Pezzulli v. D'Ambrosia, supra* 344 Pa. at 647, 26 A.2d at 661.

■ The action for wrongful death is a separate action for the benefit of certain enumerated relatives who may have sustained pecuniary loss because of the death of a person caused by another's tort. See: 42 Pa.C.S. § 8301.[2] The "damages recoverable are measured by the pecuniary loss occasioned to [the relatives] through deprivation of the part of the earnings of the deceased which they would have received from him had he lived," plus such special damages as are allowed by statute. See: *Pezzulli v. D'Ambrosia, supra* at 647, 26 A.2d at 661.

The difference between the actions was discussed by the Superior Court in *Holmes v. Lado, M.D., supra,* as follows:

> In a survival action, the personal representative of the decedent is substituted for the decedent. The recovery obtained depends on the rights of action which the decedent possessed at the time of [his or] her death and, as in a personal injury action, amounts to the damages that the decedent [himself or] herself sustained. On the other hand,

---

2. An action for wrongful death may be brought only "if no action for damages was brought by the injured individual during his lifetime." 42 Pa.C.S. § 8301(a). An action brought during the lifetime of the injured person survives the death of the injured person and may be pursued after death by his or her executor or administrator. 42 Pa.C.S. § 8302.

in a wrongful death cause of action, recovery depends upon the rights of action that the beneficiaries, as named by statute, possess. Moreover, recovery amounts to the pecuniary loss suffered by the beneficiaries by being deprived of the part of the decedent's earnings they would have received had the decedent lived. Thus, a survival action seeks to compensate for different damages than does an action for wrongful death and as a result, is separate and distinct from a cause of action in wrongful death.

*Id.,* 412 Pa.Super. at 223 n. 2, 602 A.2d at 1391 n. 2 (citations omitted). See also: *Tulewicz v. Southeastern Pennsylvania Transportation Authority,* 529 Pa. 588; 596–597, 606 A.2d 427, 431 (1992); *Frey v. Pennsylvania Electric Co.,* 414 Pa.Super. 535, 539–540, 607 A.2d 796, 798, *allocatur denied,* 532 Pa. 645, 614 A.2d 1142 (1992).

The statute of limitations governing both wrongful death and survival actions is contained in 42 Pa.C.S. § 5524(2), which provides that "[a]n action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another" must be commenced within two (2) years. In general, the statute will begin to run at the time the cause of action accrues. 42 Pa.C.S. § 5502(a). "Statutes of limitations have as their purpose the 'stimulation of the prompt pursuit of legal rights and the avoidance of the inconvenience and prejudice resulting from deciding stale cases on stale evidence.'" *Ingenito v. AC & S, Inc.,* 430 Pa.Super. 129, 132, 633 A.2d 1172, 1175 (1993), quoting *DeMartino v. Albert Einstein Medical Center, N.D.,* 313 Pa.Super. 492, 501, 460 A.2d 295, 299 (1983). "'Statutes of limitation are vital to the welfare of society and are favored in the law. . . . They promote repose by giving a stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence.'" *Bickford v. Joson, M.D.,* 368 Pa.Super. 211, 214, 533 A.2d 1029, 1030 (1987), *allocatur denied,* 518 Pa. 647, 544 A.2d 959 (1988), quoting *Schmucker v. Naugle,* 426 Pa. 203, 204, 231 A.2d 121, 123 (1967), quoting, in turn, from *United States v. Oregon Lumber Co.,* 260 U.S. 290, 299–300, 43 S.Ct. 100, 103, 67 L.Ed. 261, 270 (1922).

■■ For the action known as a "survival action," the statute of limitations, as a general rule, begins to run on the date of injury. "[A] party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period.... Thus, the statute of limitations begins to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding [does] not toll the running of the statute of limitations.... Once the prescribed statutory period has expired, the party is barred from bringing suit unless it is established that an exception to the general rule applies which acts to toll the running of the statute." *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 84, 468 A.2d 468, 471 (1983). This general rule, as we have observed, has application to a "survival action." If a period of two years has expired following the date of injury, an action for such injury is barred and cannot be asserted by the personal representatives of the injured person following his death. *Anthony v. Koppers Co., Inc.*, 496 Pa. 119, 124–125, 436 A.2d 181, 184–185 (1981). See also: *Ingenito v. AC & S, Inc., supra*, 430 Pa.Super. 129, 633 A.2d 1172.

■ The "discovery rule" is an exception to the general rule. It "arises from the inability of the injured [person], despite the exercise of due diligence, to know of the injury or its cause." *Pocono International Raceway, Inc. v. Pocono Produce, Inc., supra* 503 Pa. at 85, 468 A.2d at 471 (emphasis in original omitted). "The salient point giving rise to the equitable application of the exception of the discovery rule is the inability, despite the exercise of diligence by the plaintiff, to know of the injury. A court presented with an assertion of applicability of the 'discovery rule' must, before applying the exception of the rule, address the ability of the damaged party, exercising reasonable diligence, to ascertain the fact of a cause of action." *Id.* In *Ingenito v. AC & S, Inc., supra* 430 Pa.Super. at 131–132, 633 A.2d at 1174–75, this Court discussed "reasonable diligence" as follows:

" 'The standard of reasonable diligence is an objective or external one that is the same for all individuals.' " *Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 292, 505 A.2d 973, 988 (1985), quoting *Petri v. Smith,* 307 Pa.Super. 261, 271, 453 A.2d 342, 347 (1982). "We evaluate the plaintiff's conduct in terms of what he should have known at a particular time by following a course of reasonable diligence. If a party has the means of discovery within his power but neglects to use them, his claim will still be barred." *Burnside v. Abbott Laboratories, supra* [351 Pa.Super.] at 292, 505 A.2d at 988. See: *DeMartino v. Albert Einstein Medical Center, N.D.,* 313 Pa.Super 492, 508, 460 A.2d 295, 303 (1983). A plaintiff does not need to know that he has a cause of action, or that he has suffered an injury due to another party's wrongful conduct. " '[O]nce [a plaintiff] possesses the salient facts concerning the occurrence of his injury and who or what caused it, he has the ability to investigate and pursue his claim.' " *Burnside v. Abbott Laboratories, supra* [351 Pa.Super.] at 291, 505 A.2d at 987–988, quoting *Berardi v. Johns–Manville Corp.,* 334 Pa.Super. 36, 44, 482 A.2d 1067, 1071 (1984) (emphasis omitted). A diligent investigation may require one to seek further medical examinations as well as competent legal representation. *Souders v. Atlantic Richfield Co.,* 746 F.Supp. 570, 573 (E.D.Pa.1990), citing *United States v. Kubrick,* 444 U.S. 111, 123, 100 S.Ct. 352, 360, 62 L.Ed.2d 259, 270 (1979).

When the "discovery rule" is applicable to a survival action, the rule

causes the statute of limitations to commence to run on the date when the victim ascertained, or in the exercise of due diligence should have ascertained, the fact of a cause of action. In no case, however, can that date be later than the date of death; hence, the statute runs, at the latest, from death.

*Pastierik v. Duquesne Light Co.,* 514 Pa. 517, 524, 526 A.2d 323, 327 (1987). See also: *Anthony v. Koppers Co., Inc., supra* 496 Pa. at 124–125, 436 A.2d at 184.

■ Here, the decedent knew that he had been diagnosed with mesothelioma before the end of January, 1985. Mesothelioma is a rare form of cancer which is almost invariably caused by exposure to asbestos. See: *O'Brien v. National Gypsum Co.*, 944 F.2d 69, 71 (2nd Cir.1991); *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1381 (11th Cir.1990). The probable cause of Baumgart's condition was known to his physicians and available to Baumgart as early as January or February, 1985. Indeed, Baumgart's treating physicians repeatedly asked him during this period about his exposure to asbestos. His cause of action for mesothelioma, which survived his death and accrued to his estate in the form of a survival action, was not filed until March 26, 1987. By then, however, the action was barred by the two year statute of limitations enacted by the legislature at 42 Pa.C.S. § 5524(2). See: *Ingenito v. AC & S, Inc., supra; Love v. Raymark Industries, Inc.*, 430 Pa.Super. 155, 633 A.2d 1185 (1993).

■ Baumgart's lack of knowledge that he had been exposed to asbestos, if such was the case, was insufficient to toll the statute of limitations. Lack of knowledge, mistake or misunderstanding does not toll the running of the statute of limitations. *Pocono International Raceway, Inc. v. Pocono Produce, Inc., supra* 503 Pa. at 84, 468 A.2d at 471. That Baumgart knew of his injury is clear. The cause thereof was not obscure. It was either known to him or readily ascertainable. "The polestar of the Pennsylvania discovery rule is not a plaintiff's actual acquisition of knowledge but whether the information, through the exercise of due diligence, was knowable to the plaintiff." *Ingenito v. AC & S, Inc., supra* 430 Pa.Super. at 132, 633 A.2d at 1175, citing *Owens v. Lac D'Amiante Du Quebec, Ltee.*, 656 F.Supp. 981, 983 (E.D.Pa. 1987), *aff'd*, 833 F.2d 306 (3d Cir.1987). The failure to make inquiry when the information is available is a failure to exercise reasonable diligence as a matter of law. *Ingenito v. AC & S, Inc., supra; Love v. Raymark Industries, Inc., supra.* Baumgart possessed the salient facts and was able, in

the exercise of due diligence, to determine the existence of a cause of action more than two years before the survival action was commenced. Indeed, the same salient facts enabled his widow to file a workmen's compensation claim for death caused by occupational exposure to asbestos within five months after his death.

The trial court did not err when it entered summary judgment in favor of the defendants in the survival action, and that judgment must be affirmed.

 The statute of limitations is applied differently to wrongful death actions. It begins to run when a pecuniary loss is sustained by the beneficiaries of the person whose death has been caused by the tort of another. This, invariably, is the date of death. Therefore, the rule is that an action for the wrongful death of another person must be brought no later than two years after the date of death. *Pastierik v. Duquesne Light Co., supra; Symbula v. Johns–Manville Corp.*, 514 Pa. 527, 526 A.2d 328 (1987). The "discovery rule" can have no application to extend the time for filing a wrongful death action beyond the statutory period allowed therefor. *Symbula v. Johns–Manville Corp., supra; Anthony v. Koppers Co., Inc., supra.* See also: 18 Std.Pa.Practice, Actions for Wrongful Death § 97:18.

 In the instant action, Baumgart died from lung cancer on March 31, 1985, and an action for his wrongful death was commenced on March 26, 1987. This was within two years of Baumgart's death. Under these circumstances, the trial court erred when it entered summary judgment in favor of the defendant-manufacturers of asbestos.[3]

Affirmed in part, reversed in part, and remanded for further proceedings in the wrongful death action. Jurisdiction is not retained meanwhile.

FORD ELLIOTT, J., files a Dissenting Opinion in which DEL SOLE and KELLY, JJ., join.

---

**3.** When Baumgart died on March 31, 1985, it is clear that an action for mesothelioma was not already barred by the statute of limitations. Compare: *Ingenito v. AC & S, Inc., supra* and *Love v. Raymark Industries, Inc., supra.*

FORD ELLIOTT, Judge, dissenting:

My review of the record leads me to conclude that there are genuine issues of material fact as to whether decedent exercised due diligence. Unlike my review of other recent asbestos cases, my concern is not over due diligence in ascertaining an injury, but rather in ascertaining the cause of that injury. The *Cathcart* test has two distinct parts:

> [t]he statute of limitations begins to run in 'creeping disease' cases when the plaintiff knows, or reasonably should know: (1) that he has been injured, *and* (2) that his injury has been caused by another party's conduct.

*Cathcart v. Keene Industrial Insulation,* 324 Pa.Super. 123, 471 A.2d 493 (1984) (emphasis added). "Reasonably should know" is measured by the due diligence standard. Due diligence, thus, applies equally to both parts of the test, and both parts of the test must be satisfied before the statute begins to run.

Thus, while I agree with the majority that the diagnosis of mesothelioma may, as a matter of law, indicate knowledge of an injury as early as the end of January 1985, under the facts of this case, this does not satisfy the second prong of *Cathcart:* knowledge the injury was caused by another's conduct.

In the record, decedent consistently denied ever having been exposed to asbestos. Decedent's wife testified in her deposition that decedent never told her that he worked with asbestos products. Decedent's treating physician, Dr. Garcia, testified in his affidavit that "while Mr. Anthony Baumgart was under my care, I never secured from him a history of having had exposure to asbestos." (Affidavit of Dr. Alfredo J. Garcia, 2/18/92.) In a letter to appellant's counsel dated March 26, 1988, Dr. Garcia wrote, "at your request I have reviewed my records and I do not recall discuss[ing] with him (decedent) or his wife the relationship between mesothelioma and asbestos." Records from the treating physicians at Allegheny General Hospital also indicate a uniform denial of ever having been exposed to asbestos. Dr. Paul, the physician who diagnosed decedent's mesothelioma, stated in his affidavit:

Mr. Baumgart (decedent) never gave me a history of exposure to asbestos even though I asked him on several occasions if he had exposure to asbestos. He stated that he had not been exposed to asbestos. I did not at any time during his lifetime tell him that his mesothelioma was caused by asbestos exposure.

(Affidavit of Dr. Jay Paul, 2/26/92.)

The one constant throughout the entire record is that decedent denied any exposure to asbestos. Considering the record in a light most favorable to appellant, as we are required to do, we must then conclude that decedent believed he was never exposed to asbestos. Such facts certainly impact on the due diligence question with respect to the second prong of the *Cathcart* test. Assuming the majority is correct that decedent had knowledge of his injury on January 29, 1985, that mesothelioma is an injury related cancer, from that date until the date of his death appellant only lived 60 days. Twenty-two of those days were spent in the hospital, and the remainder of the time was spent in the dying process. Perhaps a jury would not find it unreasonable for decedent to have failed to investigate and determine the cause of his mesothelioma during that sixty-day period. Especially when the record indicates that no doctor ever informed decedent that mesothelioma was caused by asbestos exposure and appellant denied ever having been exposed to asbestos.

DEL SOLE and KELLY, JJ., join in this Dissenting Opinion.