## Brodie v. Morgan, Lewis & Bockius LLP

*Clifford E. Haines,* for plaintiff.
*William J. O'Brien, Nancy J. Gellman* and *James J. Rohn,* for defendant.

SHEPPARD JR., *J.,* January 20, 2005—Defendant, Morgan, Lewis & Bockius LLP, has filed a motion for judgment on the pleadings. Plaintiffs, Stefan E. Brodie, Don B. Brodie, Bro-Tech Corporation (The Purolite Company) oppose it. Oral argument was conducted on December 20, 2004.

For the reasons set forth, the motion is *granted, in part.* The court grants the motion as to Count I (malpractice) and Count III (fiduciary duty) based on the applicable statute of limitations. Otherwise, the motion is denied.

## BACKGROUND

The salient facts as alleged by plaintiffs can be briefly stated.[1]

Plaintiffs, Stefan E. Brodie and Don B. Brodie, together with their jointly owned company, Bro-Tech Corporation, d/b/a "The Purolite Company" (Purolite), brought this action against Morgan, Lewis & Bockius LLP (ML&B) for providing erroneous advice regarding whether Purolite's foreign affiliates could, in light of the United States' trade embargo of Cuba, lawfully direct sales to that country. Plaintiffs contend that ML&B's bad advice and actionable conduct led to their being charged

---

1. Because the cadence of events and dates of certain events are germane to the issues presented, a statement of the history of the parties' relationship is necessary.

in criminal actions for violating the United States trade embargo with Cuba and other losses.

Purolite was formed in 1982. It is engaged in the manufacture and sale of specialty resins and other materials used in water purification and other treatment applications. Purolite has manufacturing, warehousing, application and research facilities around the world. Compl. at ¶13. Since its inception, ML&B was counsel to Purolite. *Id.* at ¶14.[2]

In 1993, Purolite's auditor, Deloitte & Touche LLP, identified a 1992 sale by the company's British affiliate, Purolite International, to Galax, a Canadian company known to direct sales to Cuba. *Id.* at ¶15. Plaintiffs sought advice from ML&B regarding this transaction. *Id.* at ¶16. ML&B advised Deloitte that since the sale to Cuba was unintentional and inadvertent, the risk of liability was very low. *Id.* at ¶17. Plaintiffs allege that ML&B's characterization of management's representations of the transaction as "unintentional" and "inadvertent" was false. *Id.* at ¶19.

Deloitte, relying on ML&B's advice, issued a March 19, 1993 internal control letter to management stating that the likelihood of fines and penalties being assessed against the company was remote. *Id.* at ¶18.

Concerning future trade with Cuba, Joseph Griffin, Esquire, an ML&B partner, who was represented as an expert in international trade law, counseled plaintiffs that they could not direct Purolite's foreign affiliates to discontinue trade with Cuba because the United Kingdom and Canada had enacted "blocking statutes" which pro-

---

2. ML&B ceased its representation of Purolite in March 2002.

hibit terminating trade with Cuba based on another country's embargo. *Id.* at ¶21. Griffin advised that since there was no intent by any United States person at Purolite to break the United States embargo, there had been no violation of the United States law. *Id.* at ¶22. Griffin further advised that future transactions with Cuba should be conducted with "no U.S. involvement." *Id.* at ¶23.[3]

Plaintiffs allege that, although their preference was to discontinue trade with Cuba since that business generated a relatively small amount of profit in the face of what appeared to be great risk, they relied on ML&B's advice and distributed a memorandum, dated April 7, 1993, stating that "[w]hile it is proper to ship [orders to Cuba] from the UK in terms of UK law, it is contrary to USA policy and law to ship material of any kind to the island nation of Cuba in violation of the US embargo." *Id.* at ¶¶22, 24. According to plaintiffs, this memorandum was drafted primarily by Mr. Griffin and Joseph Hennessy, Esquire.[4]

Purolite implemented a policy consistent with, and in reliance upon, the April 1993 memorandum and ML&B's advice concerning the applicability of foreign blocking statutes. Specifically, Purolite relied on ML&B's advice in not taking steps to cease trade between its foreign subsidiaries and Cuba during the time period of 1993-1997. *Id.* at ¶26.

---

3. According to plaintiffs, "no U.S. involvement" meant that no United States citizen was to be involved, no United States raw materials were to be used in the manufacture, and no United States owned transportation was to be used. *Id.*

4. Mr. Hennessy was also an ML&B partner. Unfortunately, both Mr. Hennessy and Mr. Griffin are deceased.

Plaintiffs argue that due to ML&B's knowledge of the structure and operation of Purolite and its subsidiaries, ML&B knew that the operations of each of Purolite's foreign subsidiaries were inextricably tied to Purolite's United States headquarters. Thus, the advice provided by Mr. Griffin and Mr. Hennessy was incorrect and ML&B's work was substandard. *Id.* at ¶¶28-29. Plaintiffs argue that the issuance of the April 1993 memorandum and implementation by the company of the policies suggested by ML&B, in part, formed the basis of the federal government's criminal case against them. *Id.* at ¶27.

In February 1997, Purolite was informed by the United States Customs Service (USCS) that it was investigating the company's trade involvement with Cuba. *Id.* at ¶31. Upon learning that they were being investigated, plaintiffs were referred to Edward Dennis, a partner in the Philadelphia office of ML&B. Mr. Dennis had formerly been the United States Attorney for the Eastern District of Pennsylvania and an Assistant Attorney General for the Criminal Division of the United States Department of Justice. *Id.* at ¶39. Mr. Dennis advised plaintiffs that the foreign "blocking statutes" would provide them with a complete defense to any charges concerning violation of the embargo, including the transaction under investigation by the USCS, as well as ongoing and future transactions. *Id.* at ¶41. Mr. Dennis also advised that continuing sales by Purolite's foreign affiliates to Cuba were lawful and should not be discontinued, so as not to violate the laws of the countries of such subsidiaries. *Id.* at ¶45. Plaintiffs maintain that they relied on this advice with regard to the conduct of their business with Cuba.

In March 1997, plaintiffs received the first of several grand jury subpoenas seeking documents related to Galax. ML&B's new matter at ¶151. During the two-year period 1998-2000, eight more grand jury subpoenas were issued for various records related to sales to Cuba. *Id.* at ¶152. In September 1999, Mr. Dennis met with the U.S. Attorney and urged that the blocking statutes were a defense to the charges that were going to be brought against plaintiffs. *Id.* at ¶155. Notwithstanding this meeting, one month later, plaintiffs received a letter advising that they were a target of a federal grand jury investigation. *Id.* at ¶159. On June 8, 2000, Mr. Dennis met with James Robinson, Assistant Attorney General for the Criminal Division in the Department of Justice in Washington, D.C. in an effort to seek declination of criminal prosecution. *Id.* at ¶166. Mr. Dennis was unsuccessful and in October 2000, plaintiffs were indicted on charges of conspiring to engage in transactions which contravene the Trading with the Enemy Act (TWEA) and the Cuban Assets Control Regulations (CACR).[5] *Id.* at ¶171; Compl. at ¶48; *United States of America v. Stefan Brodie, Donald Brodie, James E. Sabzali, Bro-Tech Corporation d/b/a "The Purolite Company,"* 174 F. Supp.2d 294 (E.D. Pa. 2001). Defendants, Donald Brodie, James Sabzali (Canadian sales manager in Bro-Tech's Canadian sales office, Purolite Canada)[6] and Bro-Tech, were charged with 75 counts of TWEA violations. *United States of America v. Stefan*

---

5. Stefan Brodie was named in one count: conspiracy to violate the TWEA and CACRs. *United States of America v. Stefan Brodie, Donald Brodie, James E. Sabzali, Bro-Tech Corporation d/b/a "The Purolite Company,"* 174 F. Supp.2d 294 (E.D. Pa. 2001).

6. Mr. Sabzali is not a party to this action.

*Brodie, Donald Brodie, James E. Sabzali, Bro-Tech Corporation d/b/a "The Purolite Company,"* 174 F. Supp.2d 294 (E.D. Pa. 2001).

On March 22, 2001, plaintiffs moved to dismiss the indictment on the basis of the Foreign Sovereign Compulsion Doctrine. The district court denied plaintiffs' motion and disallowed plaintiffs from presenting the Foreign Sovereign Compulsion Doctrine defense at trial, holding that "there is no place for the doctrine in a criminal case." Compl. at ¶48; *United States of America v. Stefan E. Brodie, Donald B. Brodie, James E. Sabzali, Bro-Tech Corporation d/b/a "The Purolite Company,"* 174 F. Supp.2d 294, 300 (E.D. Pa. 2001).

Plaintiffs allege that in rendering advice regarding the defense under the Foreign Sovereign Compulsion Doctrine and its likely availability as a defense, ML&B disregarded research memoranda generated by its own attorneys, ignoring the case law cited therein. Compl. at ¶51. According to plaintiffs, these memoranda demonstrated that the Foreign Sovereign Compulsion Doctrine had been narrowly applied by United States courts, and that the doctrine applied only in situations where a foreign government mandated that a specific company take a particular action that would place the company's conduct in a direct conflict between foreign law and the United States law. *Id.* Plaintiffs aver that the conclusions set out in these memoranda are consistent with the district court's decision in *United States of America v. Stefan E. Brodie, Donald B. Brodie, James E. Sabzali, Bro-Tech Corporation d/b/a "The Purolite Company,"* 174 F. Supp.2d 294, 300 (E.D. Pa. 2001). *Id.* Plaintiffs further aver that although these memoranda were forwarded to Edward Dennis, Mark Bravin and John Dodds, another

ML&B partner, they were not shared with plaintiffs. *Id.* at ¶¶53-54.

Between October 2000 and January 2001, plaintiffs retained various lawyers relative to the criminal proceedings.[7] ML&B's representation of plaintiffs ended in early March 2002, before the commencement of the criminal trial. ML&B's new matter at ¶¶171, 180-87.

Following trial in federal court, a jury found the plaintiffs guilty of conspiracy to violate the TWEA and the CACRs in connection with four sales in 1996 and all sales from 1997 to 1999. ML&B's new matter at 189; *United States of America v. Stefan E. Brodie, Donald B. Brodie, James E. Sabzali, Bro-Tech Corporation d/b/a "The Purolite Company,"* 268 F. Supp.2d 420 (E.D. Pa. 2003). After verdict, the trial court granted Stefan Brodie's motion for acquittal based on insufficient evidence. The court also granted the other plaintiffs' motion for a new trial based on prosecutorial misconduct. *United States of*

---

7. On October 6, 2000, Paul R. Rosen, Esquire, of Spector Gadon & Rosen PC, entered his appearance on behalf of Don Brodie. On January 16, 2001, Mr. Rosen withdrew his appearance for Don Brodie and entered his appearance on behalf of the company. On October 11, 2000, Gregory Craig, Esquire, of Williams & Connolly in Washington, D.C., entered his appearance as counsel for Stefan Brodie. Williams & Connolly had been retained by plaintiffs as early as May 2000. On October 27, 2000, Kevin M. Downey, Esquire, of Williams & Connolly entered his appearance on behalf of Stefan Brodie. On January 16, 2001, Steven Kimelman, Esquire, and M. Scott Peeler, Esquire, of Arent Fox entered their appearances as counsel for Don Brodie. Additionally, prior to the commencement of the criminal proceeding, the company retained John Ellicot of Covington & Burling, Washington, D.C., concerning matters being investigated by the United States attorney.

*America v. Stefan E. Brodie, Donald B. Brodie, James E. Sabzali, Bro-Tech Corporation d/b/a "The Purolite Company,"* 268 F. Supp.2d 420 (E.D. Pa. 2003). The government appealed the trial court's acquittal of Stefan Brodie. This appeal is pending in the Third Circuit.

On February 27, 2004, plaintiffs Don Brodie and Purolite pled guilty in federal court to one count, charging them with violating the TWEA and CACRs by authorizing and reimbursing February 1996 expenses related to travel involving transactions with Cuba by a company employee. ML&B's new matter at ¶¶96-97 and exhibit 4, exhibit 6; reply to new matter at ¶¶11, 14, 19, 24.

On February 11, 2004, plaintiffs filed this complaint, setting forth counts for trespass/professional malpractice, breach of contract and breach of fiduciary duties. Compl. at ¶¶79-93. ML&B filed its answer with new matter, raising 16 defenses which include: (a) the statute of limitations, (b) the claims are barred by the guilty pleas of the company and Don Brodie and (c) the claims are barred because of plaintiffs' knowing and willful illegal conduct. ML&B's new matter at ¶¶193-208.

Thereafter, ML&B filed this motion for judgment on the pleadings, contending that the statute of limitations bars plaintiffs' claims and that the guilty pleas of Don Brodie and Purolite also constitute a bar to these claims.

## DISCUSSION

The questions presented are:

(1) Whether plaintiffs knew or had reason to know that ML&B's advice and course of conduct caused them injury prior to the expiration of the applicable statutes of limitations, and

(2) Whether the guilty pleas to one count of the 77-count indictment entered by plaintiffs, Don Brodie and Purolite, bar their claims against ML&B.

This court holds that plaintiffs' claims for professional malpractice and breach of fiduciary duty, Counts I and III, respectively, should be dismissed because the complaint was filed beyond the applicable statute of limitations.

However, this court holds that plaintiffs' claim for breach of contract was filed within the applicable statute of limitations. Further, this court holds that Don Brodie and Purolite's guilty pleas do not bar the action against ML&B. The motion is, therefore, denied as to these issues.

## A. *Legal Standard*

Rule 1034 of the Pennsylvania Rules of Civil Procedure provides that "[a]fter the relevant pleadings are closed, but within such time as not to unreasonably delay the trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). On a motion for judgment on the pleadings, which is similar to a demurrer, the court accepts as true all well-pleaded facts of the non-moving party, but only those facts specifically admitted by the non-movant may be considered against him. *Mellon Bank v. National Union Insurance Company of Pittsburgh*, 2001 WL 79985 at *2 (Pa. Super. Jan. 31, 2001). However, "neither party will be deemed to have admitted conclusions of law." *Id.* See also, *Flamer v. New Jersey Transit Bus Operations*, 414 Pa. Super. 350, 355, 607 A.2d 260, 262 (1992) ("While a trial court cannot accept the conclusions of law of either party when ruling on a

motion for judgment on the pleadings, it is certainly free to reach those same conclusions independently."). (citations omitted)

In ruling on a motion for judgment on the pleadings, the court should confine itself to the pleadings, such as the complaint, answer, reply to new matter and any documents or exhibits properly attached to them. *Kelly v. Nationwide Insurance Co.,* 414 Pa. Super. 6, 10, 606 A.2d 470, 471 (1992). See also, *Kotovosky v. Ski Liberty Operating Corp.,* 412 Pa. Super. 442, 445, 603 A.2d 663, 664 (1992). "Such a motion may only be granted in cases where no material facts are at issue and the law is so clear that a trial would be a fruitless exercise." *Ridge v. State Employees' Retirement Board,* 690 A.2d 1312, 1314 n.5 (Pa. Commw. 1997). (citations omitted)

## B. *The Statute of Limitations*

Defendant has moved to dismiss plaintiffs' claims on the ground of the applicable statutes of limitations. Plaintiffs' claims sound both in tort (professional malpractice and breach of fiduciary duty) and in contract, therefore, the applicable statutes of limitations are two and four years, respectively. See 42 Pa.C.S. §§5524, 5525. Defendant claims that when plaintiffs were advised by the United States Attorney in 1999 that they were targets of a federal grand jury investigation and that the government would be seeking indictments of plaintiffs for violating federal laws concerning trade with Cuba, plaintiffs knew or should have known that ML&B's erroneous advice had caused them injury. Plaintiffs' claim that they did not know of ML&B's malpractice until March 2002, when the relationship between ML&B and plaintiffs was

severed and they learned of the existence of ML&B's memoranda that contradicted ML&B's advice and course of conduct.

As a general rule, a party asserting a cause of action is under a duty "to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period. . . . Thus, the statute of limitations begins to run as soon as the right to institute and maintain suit arises; lack of knowledge, mistake, or misunderstanding do not toll the running of the statute of limitations . . . ." *Pocono International Raceway v. Pocono Produce,* 503 Pa. 80, 84, 468 A.2d 468, 471 (1983).

An exception to the general rule is the "discovery rule." The discovery rule is applicable when a plaintiff is completely unable, despite the exercise of due diligence, to discover an injury. *Lewey v. H.C. Frick Coke Co.,* 166 Pa. 536, 31 A. 261 (1895); *Colonna v. Rice,* 445 Pa. Super. 1, 664 A.2d 979 (1995).

"The 'discovery rule' provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. . . . The 'discovery rule' arises from the inability of the injured party, despite the exercise of reasonable diligence, to know of the injury or its cause. . . ." *Colonna v. Rice, supra,* 445 Pa. Super. at 4-5, 664 A.2d at 980. (citations omitted)

"The standard of reasonable diligence is an objective or external one that is the same for all individuals. It is

not a subjective standard." *Id.* at 6, 664 A.2d at 981. *"When [the] information is available,* the failure of a plaintiff to make the proper inquiries is failure to exercise reasonable diligence as a matter of law." *Kingston Coal Company Inc. v. Felton Mining Company Inc.,* 456 Pa. Super. 270, 280, 690 A.2d 284, 289 (1997), citing *Baumgart v. Keene Building Products Corporation,* 430 Pa. Super. 162, 169-70, 633 A.2d 1189, 1193 (1993). (emphasis added)

When information is not available to plaintiff, the doctrine of equitable tolling may toll the statute of limitations. The doctrine of equitable tolling was explained by our Supreme Court in *Molineux v. Reed,* 516 Pa. 398, 532 A.2d 792 (1987):

"Where, 'through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry,' the defendant is estopped from invoking the bar of the statute of limitations. *Schaffer v. Larzelere,* 410 Pa. 402, 405, 189 A.2d 267, 269 (1963). Moreover, defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient. *Walters v. Ditzler,* 424 Pa. 445, 227 A.2d 833 (1967); *Nesbitt v. Erie Coach Company,* 416 Pa. 89, 204 A.2d 473 (1964)." *Molineux v. Reed, supra,* 516 Pa. at 402-403, 532 A.2d at 794.

In applying *Molineux,* our Superior Court in *Kingston Coal Co., supra,* noted that the "defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied." *Kingston Coal Co. v. Felton Mining Co. Inc., supra,* 456 Pa. Super. at 284, 690 A.2d at 291. See also, *Glenbrook*

*Leasing Company v. Beausang,* 839 A.2d 437 (Pa. Super. 2003).

Here, in light of the withheld internal memoranda that focused on the issue of the Foreign Sovereign Compulsion Doctrine and its inapplicability as a defense in the criminal action—which directly contradicted ML&B's advice to plaintiffs and their course of conduct with respect to plaintiffs' criminal defense—this court finds that the doctrine of equitable tolling controls the question when plaintiffs should have discovered that ML&B's alleged malpractice caused them injury.

This rule of law is easy to say, but difficult to apply. It is difficult to discern given the number of significant events that occurred during the crucial time period, exactly when, as reasonable men, plaintiffs should have objectively known that ML&B's conduct caused them harm.

One such event is arguably Judge Mary McLaughlin's ruling on October 23, 2001, precluding the use of the Foreign Sovereign Compulsion Doctrine as a defense. ML&B argues that this court ruling constituted clear notice to the plaintiffs that the harm visited upon them was the result of ML&B's advice and course of conduct.

In *FirstSouth Savings Association v. Goldberg & Vergotz P.C.,* 45 D.&C.4th 309 (Allegheny Cty. 1999), Judge Wettick was faced with a similar factual scenario. In *FirstSouth,* plaintiff's claims against their former counsel involved a concealed memorandum authored by their attorneys which contradicted the advice given to them by those attorneys. Judge Wettick, relying on *Molineux v. Reed,* held that the withholding of the memorandum triggered the doctrine of equitable tolling. But, Judge Wettick held that when the judge in the underlying action ruled against plaintiff on preliminary objections that

related to the defense that was at the heart of the memorandum, plaintiff had reason to question their attorney's legal advice. *FirstSouth Savings Association v. Goldberg & Vergotz P.C., supra,* 45 D.&C.4th at 329. The factual scenario of *FirstSouth* is similar to the facts pled here. Both cases involve hidden memoranda that contradicted the advice given to plaintiffs by their attorneys. Moreover, the concealed memoranda in both cases related to the viability of defenses (which the memoranda questioned) that ultimately failed.

This court submits that the *FirstSouth* decision is controlling here. Thus, when on October 23, 2001, the motion to dismiss based on the Foreign Sovereign Compulsion Doctrine defense was denied by the federal judge, the plaintiffs were reasonably on notice that the advice they had been given by ML&B was questionable. At that point, plaintiffs had a duty to exercise reasonable diligence with respect to the assurances given to them by ML&B that the Foreign Sovereign Compulsion Doctrine was a complete defense to the charges they faced in the criminal action. This date—October 23, 2001—constituted the statute of limitation "trigger" date.

Accordingly, the counts for legal malpractice and breach of fiduciary duty are barred by the two-year statute of limitations, this action having been commenced four months after the statute had run. The breach of contract claim remains viable in that this action was brought within the four-year statute of limitations.

### C. *The Guilty Pleas of Don Brodie and Purolite*

Defendant contends that by accepting a one-count plea agreement rather than face a second trial of a 77-count

indictment, plaintiffs, Purolite and Don Brodie, are barred from asserting claims against ML&B. Defendant argues that: (1) public policy bars the claims of Purolite and Don Brodie, (2) because Purolite and Don Brodie cannot establish their innocence of all acts with which they were charged, they cannot state a malpractice claim, and (3) the guilty pleas preclude Purolite and Don Brodie from establishing that ML&B's conduct was the cause of their claimed injuries.

Defendant relies on *Feld and Sons Inc. v. Pechner, Dorfman, Wolfee and Cabot,* 312 Pa. Super. 125, 458 A.2d 545 (1983), for the proposition that public policy bars the claims of Purolite and Don Brodie.

In *Feld and Sons Inc., supra,* plaintiffs were engaged in the retail men's clothing business. Defendants were a law firm hired by plaintiffs as special labor counsel. The corporation wanted to prevent the Philadelphia Joint Board, Amalgamated Clothing and Textile Workers' Union, AFL-CIO, from organizing its warehouse employees. The law firm devised a plan to prevent unionization of the warehouse employees. Defendant's plan was to ensure that a majority of the warehouse employees would vote against being represented by the union. In order to accomplish this, the corporation fired warehouse employees that were suspected of being sympathetic to the union. In addition, Larry Feld and vice presidents Klein and Jacobson were falsely designated as warehouse employees.

The union filed a representation petition with the National Labor Relations Board, seeking an order fixing the membership of the warehouse employees bargaining unit. At these hearings, plaintiffs lied under oath and submitted falsified documents in an effort to convince the

hearing officer that the designated warehouse employees were in fact warehouse employees who should be permitted to participate in the union representation election. Plaintiffs engaged in this criminal conduct on the advice, and with assistance, of the law firm labor lawyers.

The union also filed an unfair labor practice complaint with the National Labor Relations Board. A warehouse employee who knew that plaintiffs had lied under oath and submitted false documents was subpoenaed to testify at the hearing. Several of the law firm labor lawyers and Feld offered the employee a bribe to ignore the subpoena.

As a result of their conduct, the individual plaintiffs were indicted for perjury and interference with an agent of the National Labor Relations Board and were ultimately convicted of a federal crime.

Thereafter, plaintiffs alleged that, as a result of the law firm's representation, they suffered various damages, including loss of business, emotional distress, and unnecessary legal expenses.

Our Superior Court did not apply the doctrine of in pari delicto. *Id.* at 137, 458 A.2d at 551. Instead the court relied upon the general principle that "no court will lend its aid to a man who grounds his action upon an immoral or illegal act." *Id.* at 138, 458 A.2d at 552, citing *Fowler v. Scully,* 72 Pa. 456, 467 (1872). This court submits that *Feld and Sons Inc., supra,* is distinguishable and not applicable here.

This case involves a factual scenario that includes plaintiff Stefan Brodie—after the initial inquiry by the USCS but before any indictments were brought—tell-

ing ML&B that his preference was to discontinue transactions between Purolite's foreign subsidiary and Galax. Plaintiffs argue that, when informed that Stefan Brodie preferred not to enter into these transactions, ML&B informed plaintiffs that they could not legally discontinue Purolite's foreign subsidiary's trade with Galax. There is no indication in the pleadings presented here that plaintiffs willfully set out to violate the United States' trade embargo of Cuba.

Not only are the facts of *Feld* distinguishable, the rationale relied upon by the *Feld* court is also distinguishable. Plaintiffs are not asking this court to "lend its aid to a man who grounds his action upon an immoral or illegal act." *Id.* Rather, these plaintiffs are seeking to recover damages for injuries that resulted from acts that they believed were legal.

As to defendant's public policy argument, this court finds that the public interest is served where attorneys are held accountable for providing their clients with bad legal advice when those clients suffer harm as a result of that advice.

In arguing that because Purolite and Don Brodie cannot establish their innocence of all acts with which they were charged, they cannot state a trespass malpractice claim, defendant relies on *Bailey v. Tucker,* 533 Pa. 237, 621 A.2d 108 (1993). The *Bailey* decision involved two consolidated cases. Clarence Bailey was convicted of first-degree murder. His father had retained an attorney to defend his son in those criminal proceedings. Following his conviction, with the aid of new counsel, plaintiff filed a petition alleging, inter alia, that trial counsel had been ineffective. On a direct appeal of the judgment of sentence, the court reversed the judgment of sentence

and remanded the case for a new trial. A second trial was held and appellant was found guilty of voluntary manslaughter. At that point, appellant had served nine years of his life imprisonment sentence. Under these circumstances, the trial court imposed a sentence of time served and released plaintiff. Thereafter, appellant filed suit against his former trial counsel alleging both negligence and breach of contract for failing to pursue an intoxication defense.

The second case in the *Bailey* consolidated matter involved appellant Trice. Trice was charged with various drug-related federal offenses. He was convicted in federal court and sentenced to serve 15 years. Trice, acting pro se, filed a petition to vacate his sentence because of ineffective assistance of counsel. After a number of hearings and appeals Mr. Trice was granted a new trial. He was released from prison and the United States attorney's office elected to dismiss the indictments against him. Trice then filed a complaint against his former trial counsel in state court, alleging negligence and breach of contract. In new matter, the attorney raised the affirmative defense of the statute of limitations. Subsequently, the attorney filed a motion for judgment on the pleadings. The court granted the motion based on its determination that the statutory period had run. The Superior Court affirmed this ruling.

*Bailey*, too, presents this court with a distinguishable factual scenario from that which we have here. It is significant that the attorneys-appellees in *Bailey* were not hired by appellants until after they had already allegedly committed the crimes with which they were charged. *Bailey* does not involve malpractice that contributed to the actionable criminal behavior. The attorneys-appellees

began their representation of Bailey and Trice after the latter were charged with a crime. By contrast, Purolite and Don Brodie sought ML&B's legal advice concerning trade with Cuba in order to avoid violating any laws. Here, the gravamen of plaintiffs' case is *because of* ML&B's advice, plaintiffs acted in violation of the trade embargo of Cuba.

Thus, this court submits that *Bailey* does not apply. Furthermore, this court is not persuaded that the guilty pleas of Don Brodie and Purolite should preclude them from establishing that ML&B's erroneous advice caused their injury. The conduct pled to in federal court comprised of Don Brodie authorizing Bro-Tech to reimburse Sabzali $4,187 for travel to and from and within Cuba in January 1996. However, this activity was carried out because ML&B had advised plaintiffs that it would be illegal for them to discontinue transactions between Purolite foreign subsidiaries and Cuba.

There is a difference between acting intentionally with respect to conduct which one knows for certain to be a crime and acting intentionally with respect to conduct which was not known at the time it was carried out to be criminal, but, in fact, later was deemed so.

In sum, this court submits that it would be inappropriate and unfair under the facts here to hold that the guilty pleas entered by Don Brodie and Purolite barred them from claiming that ML&B's conduct caused their injuries.

## CONCLUSION

For the reasons discussed, this court grants the motion for judgment on the pleadings as to Count I and Count III based on the statute of limitations defense.

Otherwise, the court denies the motion. A contemporaneous order consistent with this opinion will be issued.

### ORDER

And now, January 20, 2005, upon consideration of the motion for judgment on the pleadings filed by defendant, the opposition of plaintiffs, the respective memoranda, all other matters of record, and after oral argument, and in accord with the opinion being filed contemporaneously, it is ordered that:

(1) The motion is granted, in part;

(2) Count I (malpractice) and Count III (breach of fiduciary duty) are dismissed based on the applicable statute of limitations;

(3) In all other respects the motion is denied.