633 A.2d 1172

Rosemary INGENITO, Administratrix of the Estate of
Francis Ingenito, and in her own right, Appellant,

v.

AC & S, INC., Amchem Products, Inc., Anchor Packing Company,
Armstrong World Industries, Inc., Asbestos Products Mfg. Cor-
poration, Dana Corporation, Fibreboard Corporation, Foster–
Wheeler Corporation, GAF Corporation, Garlock Incorporated,
Georgia–Pacific Corporation, H & A Construction, Inc., J W
Roberts Construction, Inc., John Crane Houdaille, Inc. a/k/a
Crane Packing Company, Keene Corporation, Owens–Corning
Fiberglass, Owens Illinois, Inc., Pfizer, Inc., Pittsburgh Corn-
ing Corporation, Rock Wool Manufacturing Co., Smith &
Kanzler, Southern Textile Corporation, Spraycraft Corp., T & N
PLC, U.S. Mineral Products, United States Gypsum Company,
W R Grace Company, Appellees.

Superior Court of Pennsylvania.

Argued June 7, 1993.

Filed Nov. 1, 1993.

Jeffrey G. Moyer, Philadelphia, for appellant.

James F. Hammill, Philadelphia, for appellees Keene Corp. and Owner Illinois.

Robert B. Lawler, Philadelphia, for appellees Armstrong, Dana, GAF, Pfizer, T & N PLC and United States Gypsum.

Before ROWLEY, President Judge, and WIEAND, CIRILLO, DEL SOLE, TAMILIA, KELLY, POPOVICH, HUDOCK and FORD ELLIOTT, JJ.

WIEAND, Judge.

Francis Ingenito was employed as a plumber/pipefitter from 1956 to 1984, during which period he was exposed from time to time to products containing asbestos.[1] In June, 1984, he was diagnosed with lung cancer. He died on October 30, 1986. On October 28, 1988, his widow, Rosemary Ingenito, filed wrongful death and survival actions against numerous manu-

---

1. Ingenito also had a history of smoking four packs of cigarettes a day.

facturers of asbestos-containing products. The trial court entered summary judgment in favor of the asbestos manufacturers because the action was barred by the two year statute of limitations appearing at 42 Pa.C.S. § 5524(2). The plaintiff appealed. We affirm.

In *A. McD. v. Rosen, M.D.*, 423 Pa.Super. 304, 621 A.2d 128 (1993) the Superior Court said:

> Summary judgment is proper only where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In passing upon a motion for summary judgment, a court must examine the record in a light most favorable to the nonmoving party and must resolve all doubt against the moving party. *Carns v. Yingling, M.D.*, 406 Pa.Super. 279, 282, 594 A.2d 337, 339 (1991). A summary judgment can properly be entered in favor of a defendant where plaintiff's cause of action is barred by the statute of limitations. *Wible v. Apanowicz*, 306 Pa.Super. 262, 452 A.2d 545 (1982); *Washington v. Papa*, 24 Chest. 334 (1976); *Penn–Delco Union School District Authority v. M. & L. Construction Co.*, 60 [Pa.] D. & C.2d 226 (Del.Co.1972).

*Id.* 423 Pa.Super. at 307, 621 A.2d at 130.

The statute of limitations at 42 Pa.C.S. § 5524(2) provides that "[a]n action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another" must be commenced within two (2) years. "As a matter of general rule, a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period. Thus, the statute of limitations *begins* to run as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do[es] not toll the running of the statute of limitations." *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 84, 468 A.2d 468, 471 (1983) (citations omitted) (emphasis added). See: *Nesbitt v. Erie Coach Co.*, 416 Pa. 89, 204 A.2d 473

(1964). See also: *A. McD. v. Rosen, M.D., supra,* 423 Pa.Super. at 307, 621 A.2d at 130. In general, the statutory period will begin to run when the cause of action accrues, i.e., the date on which the injury is sustained. *Pounds v. Lehman, M.D.,* 384 Pa.Super. 358, 361, 558 A.2d 872, 873, *allocatur denied,* 523 Pa. 643, 565 A.2d 1167 (1989). An injury is done " 'when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable.' " *Id.,* quoting *Ayers v. Morgan,* 397 Pa. 282, 290, 154 A.2d 788, 792 (1959).

The "discovery rule" is an exception to the rule which arises from the inability of an injured person, despite the exercise of due diligence, to know of the injury or its cause. *Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 325, 608 A.2d 1040, 1043 (1992); *Pocono International Raceway, Inc. v. Pocono Produce, Inc., supra,* 503 Pa. at 85, 468 A.2d at 471. In creeping diseases cases, it has been held, the statute of limitations begins to run when the injured person "knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Cathcart v. Keene Industrial Insulation,* 324 Pa.Super. 123, 136–137, 471 A.2d 493, 500 (1984) (footnote omitted). "A court presented with an assertion of applicability of the 'discovery rule' must, before applying the exception of the rule, address the ability of the damaged party, exercising reasonable diligence, to ascertain the fact of a cause of action." *Pocono International Raceway, Inc. v. Pocono Produce, Inc., supra,* 503 Pa. at 85, 468 A.2d at 471. " 'The standard of reasonable diligence is an objective or external one that is the same for all individuals.' " *Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 292, 505 A.2d 973, 988 (1985), quoting *Petri v. Smith,* 307 Pa.Super. 261, 271, 453 A.2d 342, 347 (1982). "We evaluate the plaintiff's conduct in terms of what he should have known at a particular time by following a course of reasonable diligence. If a party has the means of discovery within his power but neglects to use them, his claim will still be barred." *Burnside v. Abbott Laboratories, supra,* 351 Pa.Super. at 292, 505 A.2d at 988. See: *DeMartino v. Albert Einstein Medical Center, N.D.,* 313

134

Pa.Super. 492, 508, 460 A.2d 295, 303 (1983). A plaintiff does not need to know that he has a cause of action, or that he has suffered an injury due to another party's wrongful conduct. " '[O]nce [a plaintiff] possesses the salient facts concerning the occurrence of his injury and who or what caused it, he has the ability to investigate and pursue his claim.' " *Burnside v. Abbott Laboratories, supra*, 351 Pa.Super. at 291, 505 A.2d at 987–988, quoting *Berardi v. Johns–Manville Corp.*, 334 Pa.Super. 36, 44, 482 A.2d 1067, 1071 (1984) (emphasis omitted). A diligent investigation may require one to seek further medical examinations as well as competent legal representation. *Souders v. Atlantic Richfield Co.*, 746 F.Supp. 570, 573 (E.D.Pa.1990), citing *United States v. Kubrick*, 444 U.S. 111, 123, 100 S.Ct. 352, 360, 62 L.Ed.2d 259, 270 (1979).

 Where the issue involves a factual determination regarding what is a reasonable time for plaintiff to discover his injury and its cause, the issue is usually for the jury. *Hayward v. Medical Center of Beaver County, supra*, 530 Pa. at 325, 608 A.2d at 1043; *A. McD. v. Rosen, M.D., supra*, 423 Pa.Super. at 307, 621 A.2d at 130; *MacCain v. Montgomery Hospital*, 396 Pa.Super. 415, 423, 578 A.2d 970, 974 (1990), *allocatur denied*, 527 Pa. 624, 592 A.2d 45 (1991); *Burnside v. Abbott Laboratories, supra*, 351 Pa.Super. at 292, 505 A.2d at 988. However, where the undisputed facts lead unerringly to the conclusion that the time it took to discover an injury or its cause was unreasonable as a matter of law, summary judgment may be entered by the court. *Carns v. Yingling, M.D., supra*, 406 Pa.Super. at 285, 594 A.2d at 340. See also: *A. McD. v. Rosen, M.D., supra; MacCain v. Montgomery Hospital, supra*.

 On June 13, 1984, appellant's decedent was informed that he had lung cancer. His history of industrial exposure to asbestos was known to him and to the physician who made the diagnosis. The exercise of reasonable diligence would have suggested that Ingenito inquire of his physician concerning the cause of his illness. This information was immediately knowable and available to him. It was not a diagnosis or a

cause which was obscure, unascertainable or unavailable in the exercise of due diligence. The polestar of the Pennsylvania discovery rule is not a plaintiff's actual acquisition of knowledge but whether the information, through the exercise of due diligence, was knowable to the plaintiff. *Owens v. Lac D'Amiante Du Quebec, Ltee.*, 656 F.Supp. 981, 983 (E.D.Pa.1987), *aff'd*, 833 F.2d 306 (3d Cir.1987). The failure to make inquiry when information is available is failure to exercise reasonable diligence as a matter of law. *Id.* See also: *Bickford v. Joson, M.D.*, 368 Pa.Super. 211, 533 A.2d 1029 (1987), *allocatur denied*, 518 Pa. 647, 544 A.2d 959 (1988).

Although the purpose of the "discovery rule" is to mitigate in worthy cases the harshness of an absolute and rigid period of limitations, the rule cannot be applied so loosely as to nullify the purpose for which a statute of limitations exists. Statutes of limitations have as their purpose the "stimulation of the prompt pursuit of legal rights and the avoidance of the inconvenience and prejudice resulting from deciding stale cases on stale evidence." *DeMartino v. Albert Einstein Medical Center, N.D., supra*, 313 Pa.Super. at 501, 460 A.2d at 299. See also: *Insurance Co. of North America v. Carnahan*, 446 Pa. 48, 51, 284 A.2d 728, 729 (1971). " 'Statutes of limitation are vital to the welfare of society and are favored in the law. . . . They promote repose by giving a stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence.' " *Bickford v. Joson, supra*, 368 Pa.Super. at 214, 533 A.2d at 1030, quoting *Schmucker v. Naugle*, 426 Pa. 203, 204, 231 A.2d 121, 123 (1967), quoting, in turn, from *United States v. Oregon Lumber Co.*, 260 U.S. 290, 299–300, 43 S.Ct. 100, 103, 67 L.Ed. 261, 270 (1922).

Here, the undisputed facts lead unerringly to the conclusion that the decedent's failure to discover promptly the possibility of a causal connection between his diagnosed condition and his industrial exposure to asbestos was unreasonable as a matter of law. More than two years passed after the necessary information became available to him without his asserting any cause of action therefor. When he died on October 30, 1986,

an action for his injury was already barred by the statute of limitations.

Contrary to appellant's argument, her right to commence a wrongful death action was not revived by her husband's death.[2] *Cowgill v. Raymark Industries, Inc.,* 780 F.2d 324 (3d Cir.1985); *Howard v. Bell Telephone Co.,* 306 Pa. 518, 160 A. 613 (1932). "The statutory action for wrongful death is a derivative one, having for its basis the same tortious act which would have supported the injured party's own cause of action." 18 Std.Pa.Practice, Actions for Wrongful Death § 97:10. See: *Howard v. Bell Telephone Co., supra.* See also: *Rudisill v. Cordes,* 333 Pa. 544, 550, 5 A.2d 217, 219–220 (1939). As a general rule, no action for wrongful death can be maintained where the decedent, had he lived, could not himself have recovered for the injuries sustained. 18 Std.Pa.Practice, Actions for Wrongful Death § 97:10. See: *Cowgill v. Raymark Industries, Inc., supra; Grbac v. Reading Fair Co.,* 688 F.2d 215 (3d Cir.1982); *Howard v. Bell Telephone Co., supra.*

For these reasons, the trial court properly determined that both the wrongful death and survival actions were barred by the statute of limitations. The judgment entered by the trial court, therefore, must be

Affirmed.

FORD ELLIOTT, J., files a Dissenting Opinion in which SOLE and KELLY, JJ., join.

FORD ELLIOTT, Judge, dissenting:

I most respectfully dissent. I cannot do so on the basis of the majority's completely accurate statement of the law, but rather, solely on the basis of their application of the law to the facts of this case and those of the related appeals.[1] While I

---

**2.** Appellant concedes that she cannot maintain a survival action if the statute barred an action by her husband prior to his death.

**1.** *See also Love, et al. v. Raymark Industries, Inc., et al.,* 430 Pa.Super. 155, 633 A.2d 1185 (1993); *Cochran v. GAF Corporation, et al.,* 430 Pa.Super. 175, 633 A.2d 1195 (1993); *Baumgart v. Keene Building Products Corporation, et al.,* 430 Pa.Super. 162, 633 A.2d 1189 (1993).

often defer to the judgment of my learned and respected colleagues, today I must hold firm to my disagreement because I believe that this is a judgment which we are not entitled to make.

## THE DISCOVERY RULE

As noted by the majority, the genesis of the discovery rule lies in the supreme court's decision in *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959). For my purposes, a close review of that case is more instructive. *Ayers* involved a medical malpractice action brought by a patient nine years after his surgery. Chester Ayers underwent surgery in 1948 to repair a marginal jejunal ulcer. Upon his release from the hospital, Mr. Ayers experienced pains in his abdomen which continued for the next nine years. In 1957, Mr. Ayers returned to the hospital for a series of tests to determine the cause of his abdominal pain. The culprit turned out to be a metallic gauze surgical sponge which Mr. Ayers' surgeon failed to remove some nine years earlier. Consequently, Mr. Ayers sued his surgeon. The surgeon, Dr. Philip Morgan, raised the statute of limitations as an affirmative defense. On the basis of the statute of limitations defense, judgment was entered in favor of Dr. Morgan.

On appeal, the supreme court examined whether the statute should run against a plaintiff who is unaware he has been harmed by the conduct of another. The court recognized that this type of case presented an unusual set of circumstances:

It must be borne in mind that this is not a case where the act of negligence was known to the plaintiff but the extent of the damages which ensued therefrom was not ascertained until after the expiration of the statute of limitations. On the contrary, this is a case where the plaintiff did not know of the act (which eventuated in injury to him) at the time *that* act occurred.

*Ayers* at 290, 154 A.2d at 792 (emphasis in original).

To ameliorate the harsh results which would result from a straightforward application of the statute of limitations in such

cases, the court recognized the need to toll the commencement of the limitations period. As Justice Musmanno so eloquently stated:

> Laches becomes a barrier to the institution of lawsuits because the injured person has slept on his rights, but if somnolence has not corroded away his claim to recovery, the law welcomes his action to regain what has wrongfully been taken away from him. And in such a situation one may not be charged with dreaming away his right to recover if even the most watchful vigilance could not apprise him of the damage being done him.

*Id.* at 291, 154 A.2d at 793.

Thus, in *Ayers,* the supreme court laid the groundwork for what today has become known as the discovery rule. The rule recognizes that one cannot be held to have slept on one's rights, if one did not know, nor had reason to know that those rights had been violated. What is key to the application of the discovery rule is not the occurrence of the injury but rather the *knowledge* of it. Clearly, in *Ayers,* the plaintiff had been suffering the physical harm related to the surgical malpractice for some nine years. However, it was not until he discovered that the pain and discomfort was caused by the actions of another that he had requisite knowledge that this harm reflected an actionable injury.

As we know, this equitable exception was defined more specifically in *Cathcart v. Keene Industrial Insulation,* 324 Pa.Super. 123, 471 A.2d 493 (1984), in its creation of the two-prong test for creeping disease cases. Again, it was not the occurrence of the injury itself which triggered the statute, but rather knowledge of the injury. In *Cathcart,* this court held:

> [t]hat the statute of limitations begins to run in 'creeping disease' cases when the plaintiff knows, or reasonably should know: (1) that he has been injured, *and* (2) that his injury has been caused by another party's conduct.

*Id.* at 136–137, 471 A.2d at 500 (emphasis added).

Under the mandate of the two-pronged *Cathcart* test, the statute of limitations does not begin to run until a plaintiff has

requisite knowledge of an injury and its cause or reasonably should have such knowledge. The discovery rule is often applied in two different fashions. In some cases, equity demands that it be utilized to toll the period of time in which an individual is reasonably unaware that an actionable injury has been sustained. In other cases, the rule is utilized to set a date certain for determining when, in fact, a cause of action accrues. *Pounds v. Lehman,* 384 Pa.Super. 358, 558 A.2d 872 (1989). These formulations take into consideration that, in some cases, requisite knowledge of the harm and injury occur simultaneously and that in others such knowledge can occur at distinctly different points in time.

The court in *Cathcart* did not define the term "injury" in its opinion. This absence was not an oversight.[2] The court in *Cathcart* had no reason to define the term because the discovery of the physical harm to the plaintiff and its cause occurred simultaneously. In 1975, Mr. Cathcart was informed by his doctor that he had asbestosis—an injury-related disease. Unfortunately, he then delayed filing suit for several years while attempting to discover whom to sue. The court stated:

> We agree with the court in *Huber v. McElwee–Courbis Const.,* 392 F.Supp. 1379, 1383 (E.D.Pa.1974) that the burden is on the injured party, *once he discovers the cause of his injuries,* whether it be a specific event such as an unsuccessful operation or a hazardous condition such as asbestos in a person's place of employment, to determine within the statutory period (unless there is fraud or concealment) the party or parties whose negligence or breach of duty was responsible for the event or the condition. We find in the case before us that an allegation of mere

**2.** *Cathcart* states as follows:

> It should be noted that we are not attempting at this time to define 'injury.' The importance of the definition should be readily apparent. A narrow definition will greatly enlarge the rights of plaintiffs, as the statute of limitations will begin to run at a later time. Adoption of a loose definition of 'injury' will mean that the statute of limitations could begin running with the discovery of a trivial harm, with the likely consequence that inconsequential lawsuits will be filed in order to avoid statute of limitations problems.

*Cathcart,* 324 Pa.Super. at 137, n. 10, 471 A.2d at 500, n. 10.

difficulty in identifying defendants was not sufficient to toll the running of the statute of limitations as to those defendants in the 1978 case that had not been named in the 1976 action.

*Cathcart,* 324 Pa.Super. at 139, 471 A.2d at 501 (emphasis added). What is significant in *Cathcart* was that the plaintiff knew he had *asbestosis* and that this commenced the running of the statute.

What distinguishes the instant case and its companion appeals from *Cathcart* is that appellant did not learn that he had asbestosis until a point in time after he suffered the harm of which he complains, cancer. Unlike in *Cathcart,* the definition of "injury" for purposes of the running of the statute of limitations is now ripe for discussion.

A recent *en banc* decision of this court confronted the very problem of distinguishing between harm and injury. In *Giffear v. Johns–Manville Corp.,* 429 Pa.Super. 327, 632 A.2d 880 (1993)[3], although not a statute of limitations case, the court needed to distinguish between injury and harm for purposes of determining whether damages are recoverable for asymptomatic pleural thickening. The focus in *Giffear* was naturally on the word "harm," as it is a harm which gives rise to damages. In defining the two terms, Judge Cirillo, writing for the *en banc* court, looked to the Restatement (Second) of Torts. *See Giffear,* 429 Pa.Super. at 331–332, n. 6, 632 A.2d at 884, n. 6. Section 7 of the Restatement defines "injury" as "the invasion of any legally protected interest," while "harm" is defined in the same section as "the existence of loss or detriment in fact of any kind to a person resulting from *any* cause."[4] (Emphasis added.) Hence, the court held that Mr.

---

**3.** Judge Cirillo authored the decision. Judge Wieand filed a concurring opinion. Judge Del Sole filed a concurring opinion which was joined by this writer.

**4.** The court further addressed this distinction as follows:

'Injury' denotes an invasion of a legally protected interest which, if it is the legal result of a tortious act, entitles one so injured to maintain an action in tort. *Id.,* comment a. 'Harm' is carefully distinguished from 'injury.'

Giffear, even if he knew that he had been exposed to asbestos, an injury causing agent, could not pursue a claim for damages until he exhibited some physical manifestation of harm.

Instantly, we are dealing with the opposite scenario. Mr. Ingenito exhibited the physical manifestation of harm at the point he was diagnosed with cancer. However, what the record does not clearly establish is that at the time of the diagnosis of cancer, he knew, or had reason to know, that he was injured in the legal sense. In other words, that his cancer represented "an invasion by another of a legally protected interest which, if the result of a tortious act, entitled one so injured to maintain an action in tort."

In cases involving the normal operation of the statute of limitations, harm and injury occur simultaneously and are readily ascertainable. A person knows of his injury at the point the harm is sustained. The discovery rule allows for those circumstances where knowledge of harm and knowledge of injury may not always occur simultaneously. For discovery rule proposes, the limitations period will begin to run only when a person knows or has reason to know that a legally protected interest has been invaded.[5] Clearly, under these "legal" definitions, lung cancer is a harm; but until such time as the cause of the disease is known, one does not have knowledge of an injury. The causes of cancer can range from the genetic or organic to those causes such as smoking or exposure to asbestos or some other carcinogen. A genetic or organic defect generally will not involve the invasion of any legally protected interest. Thus, no injury is implicated.

'Harm' implies a loss or detriment to a person, and not a mere change or alteration in some physical person, object, or thing. Physical changes or alterations may be either beneficial, detrimental, or of no consequence to a person. In so far as physical changes have a detrimental effect on a person, that person suffers harm.
Restatement (Second) of Torts, § 7, comment b.

5. This formulation is not unlike what the supreme court recognized in *Ayers*. Clearly, Mr. Ayers had suffered the physical manifestation of harm for a long period of time. But it was not until the sponge was found in his abdomen that he had knowledge of his injury.

Cancer caused by exposure to asbestos, on the other hand, may involve the tortious invasion of a legally protected interest. Thus, an injury has been suffered.

Hence, the diagnosis of cancer without more, at most, alerts a person that a harm has been suffered. Instantly, on the scant facts before this court I cannot impute to Mr. Ingenito knowledge of an *injury* as of the date he learned he had cancer. But the inquiry under *Cathcart* does not stop here. Rather, the discovery rule imposes vigilance on those seeking to enforce their rights. This vigilance is defined as the duty of due diligence.

## DUE DILIGENCE

As the majority sets out, due diligence is an essential component of the discovery rule. The absence of such a duty would mean that a potential plaintiff could wait indefinitely before acting, subverting the policies underlying statutes of limitations and causing great prejudice to a defendant. *Trieschock v. Owens Corning Fiberglas Co.*, 354 Pa.Super. 263, 511 A.2d 863 (1986). The duty of due diligence defines the time period in which a plaintiff will be charged with knowledge of an injury and its cause whether or not he has actual knowledge. *Trieschock, supra; Pounds, supra;* and *Burnside, supra.*

> The general purpose of the discovery rule, in our opinion, is to exclude the period of time to which the injured party is *reasonably unaware* of the fact that an actionable injury has been sustained so that people in that class have essentially the same rights as those who suffer an immediately ascertainable injury.

*Pounds,* 384 Pa.Super. at 363–364, 558 A.2d at 874 (emphasis added). Hence, an assessment of diligent conduct must begin with a determination of the reasonableness of a plaintiff's asserted lack of knowledge.

Again, as set out by the majority, what constitutes reasonable diligence has been addressed by this court. And although the majority quotes some of the eloquent expression of

President Judge Rowley as contained in *Petri v. Smith,* 307 Pa.Super. 261, 453 A.2d 342 (1982), I feel compelled to set forth his full statement on the question of reasonableness because I believe it lies at the heart of the instant case.

What is or is not 'reasonable' under the circumstances in this case requires an evaluation of appellant's actions to determine whether she exhibited 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others'. *Restatement, Torts 2d,* § 283, comment: b. The standard of reasonable diligence is an objective or external one that is the same for all individuals. It is not a subjective standard. It is a community standard. *It is sufficiently flexible, however, to take into account differences between persons, their capacity to meet certain situations and the circumstances confronting them at the time in question. In short, the standard of conduct required is a uniform one which takes 'into account the fallibility of human beings.'* *Restatement, Torts 2d,* § 283, comment: b. and c. *Our law recognizes that, usually, what that standard is may be best determined by the collective judgment, wisdom, and experience of jurors who have been selected at random from the community whose standard is to be applied.*

*Petri* at 271–272, 453 A.2d at 347 (emphasis added). *See also Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 505 A.2d 973 (1985), *quoted in part;* and *DeMartino v. Albert Einstein Medical Center,* 313 Pa.Super. 492, 460 A.2d 295 (1983), *quoted in part.*

Absent active concealment, I can think of very few times when the knowledge of one's injury and its cause would not be available and ascertainable with some investigation and diligence. But this is not the test. " 'In defining reasonable diligence, the courts have stated '[t]here are very few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence.' " *A. McD. v. Rosen,* 423 Pa.Super. 304,

309, 621 A.2d 128, 131 (1993), *quoting Baily v. Lewis,* 763 F.Supp. 802 (E.D.Pa.1991), *affirmed,* 950 F.2d 721 (3rd Cir. 1991). The test focuses on the objective reasonableness of the injured party's conduct in ascertaining the necessary information. This is generally a question of fact. Absent some specific indication on the record that a plaintiff knew, the question of "should have known" is for the jury.

Instantly, the real issue presented by this case and those of the companion appeals is whose judgment should prevail on the issue of appellant's diligence, ours or the "collective judgment, wisdom, and experience" of jurors.

## THE JURY QUESTION

As recognized by the majority, "[i]n many cases, perhaps in *most,* the issue of what a plaintiff reasonably should have discovered is not a question that may be resolved as a matter of law at the summary judgment stage but instead is a question for the jury." *Anthony v. Koppers Co., Inc.,* 284 Pa.Super. 81, 110, 425 A.2d 428, 443 (1981), *rev'd on other grounds,* 496 Pa. 119, 436 A.2d 181 (1982). It is clear from reviewing numerous discovery rule cases that generally the issue of due diligence is a factual issue for resolution by a jury; it is only the exceptional case which can be decided at the summary judgment stage. In these exceptional cases there is plainly evidence of record that plaintiffs have failed to exercise due diligence, "a smoking gun," so to speak. For example, in *Holmes v. Lado,* 412 Pa.Super. 218, 602 A.2d 1389 (1992), *allocatur denied,* 530 Pa. 660, 609 A.2d 168 (1992), plaintiff's survivors brought suit November 15, 1988 for failure to diagnose decedent's breast cancer. However, appellant's deposition testimony revealed that the decedent had been aware of the cancer since September 1985 following a biopsy. In *Carns v. Yingling,* 406 Pa.Super. 279, 594 A.2d 337 (1991), plaintiff brought suit November 4, 1988 for failure to diagnose abscessed pelvic fistula. However, plaintiff had been aware of the condition and its cause since August 1986, when a definitive diagnosis was made and it was decided that corrective surgery was necessary. In *MacCain v. Montgomery Hospi-*

*tal,* 396 Pa.Super. 415, 578 A.2d 970 (1990), plaintiff brought suit November 21, 1986 for failure to diagnose her breast cancer. However, in her deposition, plaintiff stated that when she consulted a new physician in October 1984, this doctor informed her that her cancer was visible in the mammograms performed by appellee. The cancer was confirmed during a mastectomy on October 5, 1984. In *Ackler v. Raymark Industries, Inc.,* 380 Pa.Super. 183, 551 A.2d 291 (1988), plaintiff brought suit December 21, 1983 for work-related asbestosis. However, plaintiff had filed a workmen's compensation petition August 21, 1981 alleging work-related asbestosis. In *Chandler v. Johns–Manville Corp.,* 352 Pa.Super. 326, 507 A.2d 1253 (1986), plaintiff brought suit in September 1978 for work-related asbestosis. However, in deposition testimony plaintiff admitted that he had filed a workmen's compensation claim for asbestosis on July 14, 1976. In *Lucera v. Johns–Manville Corp.,* 354 Pa.Super. 520, 512 A.2d 661 (1986), plaintiff brought suit in 1976 claiming he did not learn that his asbestosis had been caused by the conduct of another until 1975. However, from trial testimony quoted by the court, it is clear that in 1972 plaintiff had filed a disability claim for work-related asbestosis. In *Cathcart, supra,* plaintiff brought suit in September 1978 for work-related asbestosis. However, plaintiff admitted in his deposition that he had learned he had work-related asbestosis in 1975. Further, plaintiff had filed suit in February 1976 on the same grounds. The former suit, initiated by Writ of Summons, was dismissed for failure to file a complaint.

On the other hand, in those cases where no "smoking gun" can be found, the exercise of due diligence is not so obvious and must be left to the jury. For example, in *Stauffer v. Ebersole,* 385 Pa.Super. 306, 560 A.2d 816 (1989), plaintiff brought suit in April 1984 for numbness and eventual loss of use of left hand and arm arising out of excessive radiation treatments performed in 1977 and 1978. However, the statute did not begin to run until May 1982 when another doctor alerted plaintiff that the harm was caused by scar tissue formed following excessive irradiation. Hitherto, an originally

treating physician had told appellant that the problem might be attributable to scar tissue, but did not correlate the scar tissue to the radiation treatments. In *Morgan v. Johns–Manville Corp.*, 354 Pa.Super. 58, 511 A.2d 184 (1986), plaintiff brought suit in October 1979 for asbestosis diagnosed in November 1977. Plaintiff was aware from a 1972 medical exam that he had been diagnosed as having "pleural thickening," and was also aware in 1972 that his workplace exposure to asbestos could cause asbestosis and cancer. However, the statute did not begin to run until his 1977 asbestosis diagnosis, because "pleural thickening" did not sufficiently alert plaintiff that he had been injured. In *Trieschock v. Owens Corning Fiberglas Co.*, 354 Pa.Super. 263, 511 A.2d 863 (1986), plaintiff brought suit April 6, 1984 for asbestosis resulting from workplace exposure. Plaintiff had been told by a physician in March 1982 that he suspected asbestosis. However, the statute did not begin to run until April 8, 1982 when the treating physician confirmed the diagnosis, because mere suspicion was insufficient to trigger the statute. In *Burnside v. Abbott Laboratories*, 351 Pa.Super. 264, 505 A.2d 973 (1985), plaintiff brought suit January 19, 1982 for various harms arising from her mother's use of the drug diethylstilbestrol (DES) while pregnant with plaintiff in 1953. Plaintiff began to experience various uterine problems in 1974 and was diagnosed in August 1979 with cervical stenosis. At that time plaintiff's mother also informed plaintiff of mother's DES usage. However, the treating physician in 1979 assured plaintiff that her problems were not DES related. It was not until a February 1980 television program on DES that plaintiff's concerns were reawakened. The court ruled that whether plaintiff acted with due diligence was a question of fact for the jury and reversed summary judgment. In *Acker v. Palena*, 260 Pa.Super. 214, 393 A.2d 1230 (1978), plaintiff brought suit July 30, 1975 for harm arising out of eye surgery performed November 17, 1972. However, the statute did not begin to run until August 9, 1973 when plaintiff consulted another doctor who informed her that she would lose the eye. Hitherto, the original physician had been assuring plaintiff that her eye was healing normally. What these cases clearly set forth in cases

of suspicion or need to investigate further is that summary judgment was improper as a matter of law on the question of whether due diligence was exercised.

Recently, in applying the discovery rule, the Pennsylvania Supreme Court had an opportunity to address, in a medical malpractice case, the propriety of an order granting summary judgment on the grounds that the action was time-barred. *See Hayward v. Medical Center of Beaver County,* 530 Pa. 320, 608 A.2d 1040 (1992). William Hayward was admitted to the hospital in November of 1980, complaining of chest and back pain. X-rays revealed the presence of a mass in Mr. Hayward's right lung. Pathological studies of lung tissue removed during exploratory surgery led doctors to diagnose the mass as a probable carcinoma. This diagnosis led doctors to remove the affected portion of Mr. Hayward's lung. Final pathological studies, however, revealed that the mass was not a malignant tumor, but rather a blood clot. Mr. Hayward was informed of this misdiagnosis. Over the next several years, he experienced progressive shortness of breath. Finally, in 1983, some three years following his surgery, Mr. Hayward consulted a new physician in connection with a workmen's compensation claim. At that time, he was told that the 1980 surgery, during which his lung was removed, was unnecessary and was a substantial factor in causing his disability. In 1985 Mr. Hayward filed suit against the doctors who had performed the 1980 surgery.[6]

The trial court granted summary judgment to the doctor and this court affirmed. The supreme court reversed and remanded the case for trial.[7] The court first set out the

6. It has been argued that the *Hayward* analysis cannot apply in a creeping disease case because *Hayward* is actually a concealment case. I find any such distinction to be illusory. Concealment can take many forms from actual fraud on the part of a wrongdoer to misinformation or misdiagnosis. Concealment can also occur through the body actually "hiding" the injury. Absent concealment rising to the level of fraud, the fact of concealment or misinformation goes only to the issue of due diligence and reasonableness of the injured party's conduct and not the application of the rule generally.

7. Justice Larsen authored the decision. Chief Justice Nix concurred in the result. Justice McDermott filed a concurring opinion which agreed

standard to be applied for summary judgment in discovery rule cases:

> Whether the statute has run on a claim is usually a question of law for the trial judge, but where the issue involves a factual determination, the determination is for the jury. Specifically, *the point at which the complaining party should reasonably be aware that he has suffered an injury is generally an issue of fact to be determined by the jury; only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law.*

*Hayward* at 325, 608 A.2d at 1043 (emphasis added).

The court's analysis continued by listing the various factors relied upon by each party either in support of, or in opposition to, the motion for summary judgment. The opinion then concludes with an assessment of the manner in which the jury question was presented:

> A jury could very well find that appellant reasonably should have investigated the need for the surgery at the time that he was informed of the misdiagnosis, and thereby, have discovered the alleged malpractice. A jury, however, could just as well find that appellant acted reasonably in not investigating further and in being satisfied by appellee Cuddy's assurances that the surgery was indeed necessary. *Because reasonable minds could differ as to when appellant's injury was reasonably ascertainable, a jury question is presented, and therefore, summary judgment is not appropriate.*

*Hayward* at 326, 608 A.2d at 1043 (emphasis added).

The duty of due diligence includes within its meaning the duty to investigate one's suspicions. In Mr. Hayward's case, knowledge of his injury was available and ascertainable at the time of his misdiagnosis. However, as observed by the court, the reasonableness of an injured party's actions in investigating or failing to investigate, except in the most unusual of

that the case was not appropriate for summary judgment. Justice Zappala filed a dissenting opinion.

cases, are questions for the jury based on the facts of the individual case. *In accord, Trieschock, supra* (tentative diagnosis of asbestosis not enough to start running of statute; however, it was sufficient to activate a duty to investigate). *Stauffer v. Ebersole, supra,* (physician's statement that plaintiff's problems "probably" caused by scar tissue from surgery was insufficient to trigger statute on malpractice claim; however, it was sufficient to activate duty to investigate). *Burnside v. Abbott, supra* (the reasonableness of a plaintiff's diligence in relying on a doctor's opinion and instead not further investigating the causal link between her condition and DES when she was aware of a possible connection was a question for the jury).

I note that this was not the first time our supreme court has set out the jury question. In 1959, the same year that the *Ayers* case was decided, that court had another occasion to discuss this statute of limitations issue. In *Smith v. Bell Telephone,* 397 Pa. 134, 153 A.2d 477 (1959), Mr. Smith sued the telephone company to recover damages for sewage which seeped into his basement caused by the company's negligent construction of an underground conduit some nine years earlier in 1948. Mr. Smith had been experiencing the problem since he purchased his home in 1951 and had made various efforts over the years to discover the cause. In 1956, Mr. Smith and a friend tunneled the sidewalk and found the conduit. He filed suit in 1957. On the question of whether Mr. Smith's action was time-barred, the court stated as follows:

> As for the statute of limitations, there seems to be no dispute here that the statute runs, on causes arising from sub-surface injury, from the time of discovery of the cause of the harm or the time when the cause of the harm reasonably should have been discovered, whichever is earlier. The same principle has been adverted to in a cause arising from the alleged malpractice of a surgeon in failing to provide for the removal, at the proper time, of a rubber tube left in the patient's wound, which was invisible from the outside. Since plaintiff started suit about a year after

he discovered the cause of the harm we are concerned only with when he reasonably should have discovered it. The court below found that a reasonable time within which the cause should have been discovered would have been about one month from the time he discovered the seeping sewage in March 1951. It would appear that had plaintiff in 1951 made the same intensive effort he did in 1956, or had he had a plumber do it for him, he *may* have uncovered the cause. But he explained he did not have much money and the cost of doing this was not the subject of a definite estimate. This does not pose a question for the court but for the jury.... It may be that plaintiff will not be found to be entitled to damages for the entire five years he searched and bailed, but it is for the jury, not the trial judge or this Court, to decide the reasonableness of plaintiffs' conduct.

*Smith* at 141–143, 153 A.2d at 481–482 (citations omitted) (emphasis in original).

## MR. INGENITO'S CLAIM

The majority, having first recognized appellees' substantial burden on summary judgment and additionally, the requirement that we review the record in the light most favorable to appellant, determines that the facts lead unerringly to the conclusion that Mr. Ingenito should have known that his cancer was caused by his exposure to asbestos when he was diagnosed with cancer in June of 1984.

My review of the record reveals that the various summary judgment motions rested solely upon two answers given by appellant in response to appellees' Master Interrogatories. The two interrogatories and answers thereto are as follows:

12. What are the injuries for which you are claiming compensation in this lawsuit?

RESPONSE: Lung Cancer, Pleural Asbestosis and Death.

13. What is the name and address of the doctor who diagnosed these injuries, and what was the date of diagnosis?

*RESPONSE:* Carl A. Staub, M.D.
185 S. MacDade Boulevard,
Glenolden, PA 19036
June 13, 1984.

(Plaintiff's Responses to Defendants' Master Interrogatories.)

Appellees alleged in their summary judgment motions that, read together, the answers to these two interrogatories indicate that appellant was aware decedent was suffering from an asbestos-related injury (i.e., asbestosis) on June 13, 1984. Thus, a lawsuit filed on October 28, 1988, was necessarily untimely. Appellant responded by alleging that her responses to the two interrogatories were not meant to be read together. According to appellant, she answered interrogatory # 12 by listing those injuries for which she was seeking compensation in the lawsuit. Since the asbestosis connection had been made after decedent's death, appellant included that in her answer. However, in answering interrogatory # 13, appellant only meant to indicate that the lung cancer had been diagnosed on June 13, 1984. This explanation makes some sense given that the third claimed injury listed in response to interrogatory # 12, death, could not have been diagnosed on June 13, 1984. In fact, realizing the misinterpretation of her responses, appellant filed supplemental answers to the interrogatories to remove pleural asbestosis from her answer to # 12.

Thus, all that remains in the record of this case are counter-allegations as to when appellant learned her husband's condition was related to asbestos. More precisely, the opposing positions focus upon when Mr. Ingenito should have known that his condition was asbestos related. Reading the record in a light most favorable to appellant, as the nonmoving party, I do not find that the facts lead unerringly to the conclusion that the time it took appellant to discover the injury and its cause was unreasonable.

The majority makes much of the fact that decedent's industrial exposure to asbestos was known to him and his physician at the time decedent was diagnosed with lung cancer. From that fact the majority infers that decedent should have known

his lung cancer was asbestos related. Evaluating the evidence at the time of Mr. Ingenito's exposure, the sole reference to his exposure to asbestos is contained in the doctor's chart notes.[8] They read as follows: "In the course of his work as a plumber over the years he has been exposed to asbestos." However, equally apparent from a review of the chart notes is the notation, "He also smoked 4 packs of cigarettes per day up until recently." I can find nothing to indicate that Mr. Ingenito was informed of the doctor's notes or that the doctor, himself, determined that Mr. Ingenito suffered from asbestosis. Unlike the "smoking gun" cases set out earlier, there is nothing in the present record that would indicate Mr. Ingenito knew that he had asbestosis or that there was a link between his cancer and work history.[9]

While I find little concrete evidence that decedent had actual knowledge in 1984 that he had asbestosis, an injury, I would agree with the majority that the diagnosis of cancer triggered a duty on the part of Mr. Ingenito to investigate. The issue of Mr. Ingenito's smoking is relevant to his exercise of this duty. In fact, his failure to investigate the asbestos connection might have been reasonable if he thought that his cancer was caused by his history of heavy smoking. Isn't this precisely the jury question contemplated by *Hayward?* Echo-

8. Appellees seek to rely on appellant's answer to Interrogatory # 8 which lists the work history of appellant for purposes of the lawsuit.

9. Recall in *Trieschock,* whose facts would more readily lend the case to resolution by summary judgment than the present case, where Mr. Trieschock was given a tentative diagnosis of asbestosis more than two years prior to bringing suit, this court reversed the grant of summary judgment concluding:

 A plaintiff in a creeping disease case should not be required to have greater knowledge than his physicians about his medical condition. If those physicians are not reasonably certain as to his diagnosis, then he certainly cannot be bound to have the knowledge necessary to start the statute of limitations running.

*Trieschock,* 354 Pa.Super. at 268, 511 A.2d at 866. Presently, the record reveals not even a tentative diagnosis of asbestosis. There is nothing in the record to indicate that Mr. Ingenito was apprised of any possible connection between his work and his lung cancer. However, the majority has decided in this case that Mr. Ingenito should have greater knowledge of the cause of his cancer than his physicians who, as evidenced by the record, never made a diagnosis of asbestosis during his lifetime.

ing the language of *Hayward,* a jury could very well find that Mr. Ingenito reasonably should have investigated the asbestos link at the time he was diagnosed with cancer and therefore his recovery is barred. A jury, however, could just as well find that appellant's failure to investigate the asbestos link to his cancer was reasonable in light of his lack of information generally or his history of heavy smoking.

Based on the paucity of the record in this case relative to decedent's knowledge or lack of diligence regarding the cause of his illness, I would find that reasonable minds could differ as to whether decedent exercised due diligence in ascertaining that he was injured and the cause.

## CONCLUSION

I would be less than candid and perhaps even unfair to the learned and respected trial judges whose decisions we review, if I did not show recognition of the tremendous burdens that the plethora of asbestos cases places on the trial courts. Especially in Philadelphia and Allegheny counties, the courts are inundated by these cases. Additionally, it is very difficult not to want to employ some small bit of hindsight to the area of asbestos litigation.

In fact, Judge Moss has stated in her opinion that she can take judicial notice that by 1984, it was common knowledge that asbestos could cause lung cancer. I respectfully suggest that this is what the majority is doing as well.[10] "Syllogistically" speaking, the way this judicial notice is applied is as follows: Plaintiff is diagnosed with cancer, plaintiff has worked with asbestos, asbestos causes cancer, therefore plaintiff should have known his asbestos exposure caused his cancer. My concern with this judicial notice approach is that it imputes to a plaintiff knowledge *per se* without any consideration of the facts and circumstances surrounding a plaintiff's actions. By stating this, I am *not* applying a subjective standard. Rather, I am recognizing that the application of the

10. Could we not also, therefore, take judicial notice that in 1984, it was common knowledge that cigarette smoking caused lung cancer.

objective standard must take the plaintiff as we find him and decide objectively whether he has behaved reasonably. To echo *Petri*, the test is whether plaintiff exhibited those qualities of attention, knowledge, and judgment which society requires of its members for the protection of their own interests taking into account difference between persons, their capacity to meet certain situations, and the circumstances confronting them at the time in question. Generally, such circumstances might involve what information a plaintiff may or may not have been given by a doctor, the plaintiff's type and place of employment, the length of exposure, or that cancer can have several other causes. All of these factors can mitigate a plaintiff's duty of diligence on the question of what should have been known. I can find no sense in the majority's opinion that the reasonableness of decedent's actions were assessed accordingly. Moreover, on the facts of this case this assessment seems to me better left to a jury.

Perhaps the greatest irony, of the application of the discovery rule which the majority espouses, is that if today *Ayers v. Morgan, supra,* was one of the cases under consideration by this panel, we would surely find Mr. Ayers' claim time barred. The fact that Mr. Ayers had surgery followed by nine years of abdominal discomfort before returning to the hospital for additional surgery would lead unerringly to the conclusion that the time it took for Mr. Ayers to discover his injury and its cause was unreasonable as a matter of law. The cause of his pain was knowable and ascertainable if he had only inquired sooner. Obviously, I would register my dissent to this conclusion. Furthermore, I would advocate vacating the summary judgment and remanding the assessment of Mr. Ayers knowledge and diligence to the "collective judgment, wisdom, and experience" of jurors.

Accordingly, I would vacate and remand Mr. Ingenito's case.

DEL SOLE and KELLY, JJ., join in this Dissenting Opinion.