**Aaron J. SMITH, Administrator of the Estate of Sallie R. Smith, Deceased, Plaintiff,**

v.

**AMERICAN RED CROSS and The Reading Hospital and Medical Center, Defendants.**

**Civ. A. No. 93–CV–6732.**

United States District Court, E.D. Pennsylvania.

Dec. 16, 1994.

---

Philip H. Rush, Rush & Seiken, P.C., Philadelphia, PA, John Goldstan, Reading, PA, Jay Abramowitch, Wyossing, PA, for Aaron J. Smith.

Howard M. Klein, Patricia M. Hamill, Conrad, O'Brien, Gellman & Rohn, P.C., Philadelphia, PA, for American Red Cross.

Craig A. Stone, Mette, Evans and Woodside, Harrisburg, PA, for Keystone Community Blood Bank, Inc.

Edwin L. Stock, Roland & Schlegel, P.C., Reading, PA, James S. Sell, Kane, Pugh, Knoell & Driscoll, Norristown, PA, for The Reading Hosp. and Medical Center.

## MEMORANDUM

BUCKWALTER, District Judge.

### I. INTRODUCTION

Plaintiff asks this court to use the unfortunate and tragic facts of this case to extend Pennsylvania's "separate disease rule,"[1] promulgated in the context of asbestos litigation, to cases involving Human Immunodeficiency Virus ("HIV") and Acquired Immune Deficiency Syndrome ("AIDS"). To so extend the separate disease rule would permit HIV and AIDS to be treated as separate and distinct diseases, each standing as an independent cause of action and each triggering a new statute of limitation. Although the Pennsylvania Supreme Court has not ruled on this question, basing my decision on the reasoning of prior related rulings, I do not believe that it will extend the separate disease rule to the type of case presently before this court.

In the present case, defendants American Red Cross ("Red Cross") and the Reading Hospital and Medical Center ("Reading Hospital"), have filed Motions for Summary Judgment pursuant to Fed.R.Civ.P. 56 on the ground that plaintiff's action is barred under the applicable Pennsylvania statutes of limitation. In addition, plaintiff seeks Leave to Amend his complaint. This court has jurisdiction pursuant to 36 U.S.C. § 2. For the reasons outlined below, defendants' Motions are granted and that of plaintiff is denied.

### II. BACKGROUND

In January 1984 Sallie Smith underwent coronary artery bypass surgery at the Reading Hospital during which she received a blood product provided by the Red Cross. Dr. Marc R. Filstein, Medical Director of the

---

1. Under the separate disease rule, a plaintiff can bring an action for a non-malignant, asbestos related condition, without triggering the statute of limitations with respect to an action for a later, separately diagnosed, disease of lung cancer.

Reading Hospital and Medical Center Blood Bank, in a letter dated January 27, 1987, advised Dr. Thomas Stewart, Sallie Smith's primary care physician, that Sallie Smith had been transfused with a blood product of a donor who subsequently tested HIV positive.

On February 10, 1987, during an office visit, Dr. Stewart advised Sallie Smith and her husband, Aaron Smith, that she could have been infected with the HIV virus during the surgery. Stewart Dep. at 14. Dr. Stewart provided the Smiths with details about the disease,[2] gave them a handout on AIDS and arranged for HIV testing at Reading Hospital. *Id.*

Dr. Stewart received Sallie Smith's positive test result sometime between February 10, 1987 and March 23, 1987, the day on which he informed the Smiths of the results. Aaron Smith did not test positive. Dr. Stewart informed the Smiths that Sallie Smith would develop AIDS as a result of her HIV infection, there was no cure and she would ultimately die from it. Stewart Dep. at 14–16. Dr. Stewart also reviewed blood and body fluid precautions[3] with the Smiths and told them that Sallie Smith would have to be monitored closely and treated with medications as needed to combat opportunistic diseases. *Id.*

Dr. Stewart treated Sallie Smith throughout her illness and monitored and documented the progression of the HIV infection. Until June 29, 1992, Dr. Stewart's progress notes referred to Sallie Smith and her condition alternatively as an "asymptomatic HIV individual" and "asymptomatic HIV infec-

tion." As of June 29, 1992 Sallie Smith's condition was referred to as "HIV with H–Zoster".

Sallie Smith died on September 5, 1993. The Certificate of Death lists the cause of death as "Human Immunodeficiency Viral Infection."

Aaron Smith filed the present action on October 3, 1993 alleging causes of action for negligence, strict liability, breach of warranties, survival action and wrongful death against defendants Red Cross, Keystone Community Blood Bank Inc., and Reading Hospital. Plaintiff also alleged a cause of action for informed consent battery against Reading Hospital. By stipulation of the parties, defendant Keystone Community Blood Bank, Inc. was dismissed without prejudice as a party to this action. In addition, this court granted the Motions to Dismiss claims based on strict liability and breach of implied warranty of both defendants Red Cross and Reading Hospital as well as the claim for informed consent battery asserted solely against Reading Hospital.

## III. LEGAL STANDARD

### A. Amendment of Complaint

■ Federal Rule of Civil Procedure 15(a) provides that a "party may amend [its] pleadings only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." A motion to amend must be denied if prejudice will result to the non-moving party. *Lorenz*

---

**2.** The medical testimony presented by the parties defines HIV as a progressive infection which attacks and destroys the human immune system rendering it incapable of fending off a plethora of opportunistic diseases and infections to which the body becomes susceptible. The medical evidence offered by the parties also makes clear that HIV infection ultimately progresses into AIDS for the vast majority of HIV infected persons. Dr. Chester R. Smialowicz, the medical expert for plaintiff, states in his affidavit that

[i]n sum, HIV attacks the immune system and most persons, approximately 95 percent, eventually get AIDS and die. A small percentage do not, for reasons that are unknown at this time. However, it is also true that most people die of other infections, not the HIV virus itself. Likewise, Dr. Phillip F. Pierce, medical expert for defendant Red Cross, states that HIV infec-

tion results in "progressive immunologic dysfunction" and that the "far end of this continuum has been termed AIDS." In addition, Dr. Pierce states that the term "non-progressor" has been proposed to refer to the atypical group of approximately three to seven percent of HIV infected individuals who "do not appear to experience the same immunologic degradation" as other HIV infected persons.

**3.** Dr. Stewart indicated that he informed the Smiths that blood and body fluid precautions meant they should have protected sexual intercourse; not share the same razor blades; and, that there was a possibility she could infect others if any of her body secretions were introduced into their bloodstreams.

v. *CSX Corp.*, 1 F.3d 1406, 1414 (3rd Cir. 1993). Likewise, denial can be based on "bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Id.* A proposed amendment which is barred by the statute of limitations is futile as such an amendment can neither "cure the deficiency in the original complaint" nor "withstand a renewed motion to dismiss." *Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir.1988).

### B. Summary Judgment

The Federal Rules of Civil Procedure provide that summary judgment shall be properly granted if "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party bears the burden of "showing—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The non-moving party must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir.1992). The "nonmoving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." *Pastore v. Bell Telephone Co. of Pennsylvania*, 24 F.3d 508, 511 (3d Cir.1994).

 When considering a motion for summary judgment, "inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Id.* at 512. The court may not make credibility determinations or weigh the evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If the record thus construed could not lead the trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## IV. DISCUSSION

 As previously stated, the Red Cross and Reading Hospital both have moved for summary judgment on the ground that plaintiff's claims are barred under the applicable Pennsylvania statutes of limitations. They argue that plaintiff's negligence and survival claims are governed by Pennsylvania statute 42 Pa.C.S.A. § 5524, which states that negligence, resulting wrongful death,[4] and survival claims must be commenced within two years of the date on which the injury giving rise to the claim is sustained. Defendants maintain that the cause of action for these claims began to run on March 23, 1987 when Sallie Smith learned both that she was HIV positive and the cause of her illness. Suit was not filed until October 14, 1993—over six and one-half years later.

While defendants claim that plaintiff's suit must be dismissed for failing to satisfy timely filing requirements, plaintiff argues that this court should extend the Pennsylvania separate disease rule to cases in which the claimant's injury results from HIV infection. Under such a framework, HIV infection and AIDS would be treated as "separate and distinct" illnesses, with each representing a separate cause of action and triggering a new statute of limitation. Plaintiff seeks leave to amend the complaint to aver that Sallie Smith died from AIDS and not HIV infection, as alleged in the original complaint, in order to take advantage of such a ruling and to salvage what might otherwise be a time barred claim.

Under Pennsylvania statute 42 Pa.C.S.A. § 5524, negligence, resulting wrongful death,

---

4. Under Pennsylvania law, a wrongful death claim is derivative of the tortious act giving rise to decedent's cause of action. *Ingenito v. AC & S, Inc.*, 430 Pa.Super. 129, 633 A.2d 1172, 1174 (1993). The general rule is that an action for wrongful death cannot be maintained where the "decedent, had he lived, could not himself have recovered for the injuries sustained." *Id.* Due to Sallie Smith's failure to file suit within the statutory period, Aaron Smith now cannot bring a wrongful death claim.

and survival claims must be commenced within two years of the date on which the injury giving rise to the claim is sustained. However, when the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause, the "discovery rule" tolls the statute of limitations until the plaintiff "knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Ingenito v. AC & S, Inc.*, 430 Pa.Super. 129, 633 A.2d 1172, 1174 (1993).

In *Murray v. Hamot Medical Center of City of Erie*, 429 Pa.Super. 625, 633 A.2d 196, 200 (1993), the Superior Court of Pennsylvania, in affirming the lower court ruling, held that the discovery rule is applicable in cases involving HIV infection. The facts of *Murray* are substantially similar to the facts of the case now before the court. Plaintiff Murray, who contracted HIV through blood administered during open heart surgery, failed to file suit against defendants within two years of learning that he was HIV positive. The Court of Common Pleas of Erie County ruled that plaintiff's action was time barred and granted defendants' motions for summary judgment.

On appeal, the *Murray* Court dismissed plaintiff's argument that to sue solely on the basis of HIV transmission, without any corresponding illness, was "premature." Instead, the court reasoned that plaintiff suffered an injury "once he was infected with HIV" and that his cause of action began to accrue when he "subsequently learned about the infection and its cause." *Id.*, 429 Pa.Super. 625, 633 A.2d at 202. Armed with this information, the Court wrote that "it was incumbent upon [plaintiff] to take legal action for his injury within two years from that date." *Id.*, 429 Pa.Super. 625, 633 A.2d at 201.[5]

The Court squarely rejected plaintiff's contention that an HIV-infected person has no damages during the time he is asymptomatic by noting that, although an infected person may appear asymptomatic, the virus "continues to affect the host's immune system until it becomes so depressed that a limitless number of life-threatening infirmities may occur." *Id.*, 429 Pa.Super. 625, 633 A.2d at 200.

In the instant case, plaintiff's claim, as averred in the original complaint, would be time barred under Pennsylvania law. Although Sallie Smith was infected in December of 1984, under the discovery rule the statute of limitations was tolled until March 24, 1987, the day she learned both that she was HIV positive and the cause of her illness. As of that date, it was incumbent upon Sallie Smith to file suit within two years. Aaron Smith, as administrator of the estate of Sallie Smith, did not file suit until October 14, 1993—over six and one-half years later. Therefore, this court finds that plaintiff's negligence, resultant wrongful death, and survival claims clearly are time barred.

In opposition to the result reached by this court that the present action is time barred, plaintiff presents an argument suggesting that the courts of Pennsylvania should apply the separate disease rule to tort cases involving HIV/AIDS and seeks Leave to Amend to aver that Sallie Smith died from AIDS, not HIV. Prior to the articulation of the separate disease rule in *Marinari v. Asbestos Corp. Ltd.*, 417 Pa.Super. 440, 612 A.2d 1021 (1992), Pennsylvania followed the general rule that "all claims against a defendant arising from a single transaction or occurrence must be asserted in a single action." *Id.*, 417 Pa.Super. 440, 612 A.2d at 1027. However, the *Marinari* Court reasoned that the single disease rule presented a problem in the context of asbestos litigation in that once plaintiffs are informed that they have pleural thickening (the first manifestation of asbestos exposure), they must bring an action within the applicable statute of limitation to make a claim for their present condition and for "any and all predictable later diseases and or injuries related to asbestos exposure."

---

5. Interestingly, in *Murray*, the plaintiffs raised the claim that even if their causes of action for HIV infection are time-barred, the court should apply the "separate disease rule" as enunciated in *Marinari* to allow plaintiff's cause of action for negligent contraction of AIDS. Because plaintiffs had never plead such a cause of action or amended their complaint to include it, the court decided that "this issue is not properly before us and any discussion on our part would be merely advisory."

*Id.*, 417 Pa.Super. 440, 612 A.2d at 1025. Such a rule, the Court opined, caused "inequities" because asbestos exposure does not result in only one disease. That is, the

> damage to the human body which may result from asbestos exposure does not occur as a seamless progression of a single pathology. Instead, exposure to asbestos may result in a variety of benign and malignant conditions, each of which may occur at widely divergent times.

*Id.*, 417 Pa.Super. 440, 612 A.2d at 1024.

As a consequence, the Court posited that the evidence employed to prove the possibility of future disease is inherently speculative and can result in "unfairly excessive or inadequate compensation"—that is, some plaintiffs would receive windfall damages for diseases that never materialize while others may receive little or no compensation for diseases which later became manifest. The Court wrote:

> ..., even plaintiffs who later contract cancer and who have recovered some amount of risk of cancer damages may emerge with an inequitable award, since the jury, cognizant of the less than one hundred percent chance that the plaintiff will contract cancer, likely will have awarded less than one hundred percent damages. Finally, inequitable awards are more likely to result from a future damages action simply because the damages cannot be known.

*Id.*, 417 Pa.Super. 440, 612 A.2d at 1027.

The Court continued by noting that although the prohibition against "splitting" a cause of action is designed to prevent delay and the waste of resources, this approach must yield when the "judicial objectives underlying the same are outweighed by the need to effect a just result based upon proof rather than upon sheer speculation." *Id.* The Court concluded that the "better view" is to allow recovery in a first action

> only for a disease which has already manifested itself from exposure to asbestos and the natural, predictable progression, if any, of that disease. If additional injuries from a separate disease manifest themselves in the future, such injuries will support a second action.

*Id.*, 417 Pa.Super. 440, 612 A.2d at 1023. Accord *Higginbotham v. Fibreboard Corp.*, 428 Pa.Super. 26, 630 A.2d 14 (1993), overruled in part by, *Giffear v. Johns–Manville Corp.*, 429 Pa.Super. 327, 632 A.2d 880 (1993); *Morrison v. Fibreboard Corp.*, 428 Pa.Super. 114, 630 A.2d 436 (1993), overruled in part by, *Giffear v. Johns–Manville Corp.*, 429 Pa.Super. 327, 632 A.2d 880 (1993).

In the instant case, plaintiff asserts that HIV is a "materially different injury from contraction of AIDS," and, as such, "AIDS is and should be considered a separate disease for purposes of the statute of limitations." While it cannot be denied that an individual who is HIV positive and another who has full-blown AIDS do not enjoy the same general state of health and physical well-being, plaintiff misapprehends the crucial distinction made by the *Marinari* Court. At the core of the *Marinari* decision is the recognition that since "there is no medical connection between the non-malignant and malignant [asbestos] conditions," it would be nothing short of sheer speculation to predict whether an individual with a non-malignant condition will later develop a malignant condition. *Busfield v. A.C. & S., Inc.*, 434 Pa.Super. 424, 643 A.2d 1095, 1096 (1994).

The same is not true with respect to HIV and AIDS. HIV causes AIDS. The affidavit of plaintiff's own medical expert, Dr. Chester R. Smialowicz, supports this. "In sum, HIV attacks the immune system and most persons, approximately 95 percent, eventually get AIDS and die." While it is true that the HIV infection progresses very slowly in a small percentage of individuals who may never develop AIDS—a number Dr. Smialowicz puts at five percent and defendant's expert, Dr. Phillip F. Pierce, states is between three and seven percent, it is not sheer speculation to say that HIV infection will ultimately result in full-blown AIDS as a definite and clearly defined medical connection exists between the two conditions. As previously stated, the health of individuals who are HIV positive is quite different from those who have full-blown AIDS. However, such distinctions are not what motivate the *Marinari* decision. Instead, the central focus is on whether the natural, predictable progression,

if any, of a condition or disease supports a present claim for future damages. Does non-malignant asbestosis progress into lung cancer? The medical evidence as gleaned from cases cited in this memorandum seems to suggest that the answer is no, or at least is not conclusive. Does HIV infection progress into AIDS? The medical evidence says yes at least ninety-five percent of the time. As suggested by the affidavits in this case, the likelihood that an HIV infection will progress into AIDS is great. The medical connection between HIV and AIDS precludes the necessity of the "wait and see" approach employed in the context of asbestos litigation. See *Nelson v. American Nat. Red Cross*, 26 F.3d 193 (D.C.Cir.1994).

By way of a final note to this analysis, it must be remembered that the court in *Murray* analyzed the rule in Pennsylvania that all claims against defendant arising from a single transaction or occurrence must be asserted in a single transaction and then stated, "By our decision today we do not denigrate or weaken this analytical approach." That analysis will not be set aside, it seems to me, where a just result can be reached based upon reasonably certain proof and not utter or absolute speculation.

An order follows.

### ORDER

AND NOW, this 16th day of December, 1994, it is hereby ORDERED that plaintiff's Motion to Amend is DENIED. The motions of defendants American Red Cross and The Reading Hospital and Medical Center are GRANTED, and judgment on the complaint filed in this matter is entered in favor of the defendants, American Red Cross and The Reading Hospital and Medical Center, and against the plaintiff Aaron J. Smith.